UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **BANKRUPTCY CASE NO. 09-70659** |
| **MARCOS F. LOPEZ** and | § | |
| **MARIA OLGA LOPEZ** | § | **CHAPTER 13** |
| | § | |
| DEBTORS | § | |
| | § | |
| **MARCOS LOPEZ,** | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | **ADVERSARY NO. 13-07019** |
| | § | |
| **PORTFOLIO RECOVERY** | § | |
| **ASSOCIATES, LLC,** | § | |
| | § | |
| DEFENDANT | § | |

**PLAINITFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S
AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

COMES NOW, Marcos Lopez, Plaintiff, and files this Reply to Defendant's Response to Plaintiff's Amended Motion for Leave to File Amended Complaint, and in support thereof, would respectfully show the Court as follows:

**I.
INTRODUCTION**

Initially, this case seemed to Plaintiff and Plaintiff's counsel to be a somewhat run-of-the-mill stay violation case, in which Defendant PRA had apparently attempted to collect on a debt included in Plaintiff's Chapter 13 bankruptcy. However, discovery has revealed that this case is actually about PRA having a policy and practice of aggressively attempting to collect other peoples' debts from people with similar sounding names - and doing so on an inconceivably massive scale. Indeed, it was only because Plaintiff persisted in demanding that PRA provide appropriate discovery in this case that Plaintiff has been able to uncover PRA's nefarious design.

There is nothing innocent going on here.  Nothing accidental.  This case is about PRA putting income ahead of integrity.  It is about PRA's total refusal to acknowledge the wrongfulness of any of its actions.  It is about an existential threat to the automatic stay in bankruptcy, as well as to state and federal fair debt collection laws designed to prevent such unconscionable debt collection tactics.

The Court must put a stop to PRA's abuse of Plaintiff now, and it may begin to do so by granting Plaintiff's motion to amend. The amendments that Plaintiff now proposes to add to his complaint are derived from the same root issues that formed the backbone of Plaintiff's original complaint – improper and harassing post-petition collections calls by PRA.  However, now that Plaintiff has had an opportunity to uncover more of the real story of what PRA has been doing to him, it has become apparent that the truth is even worse than what Plaintiff originally believed: PRA is not trying to collect Plaintiff's debts from him in violation of the automatic stay, PRA is actually trying to collect three other peoples' debts from Plaintiff in violation of the automatic stay and applicable debt collection laws.  Plaintiff could not have known this before filing the case and conducting the discovery he has conducted thus far. Thus, the proposed amendment is not unduly prejudicial, nor is it futile.  Rather, the amendment is necessary to ensure that this case is adjudicated on the facts as they have revealed themselves through discovery.

## II.
## STATEMENT OF FACTS / HISTORY OF THE CASE

### A.  Plaintiff's motion to amend cannot be properly evaluated without considering PRA's persistent, flagrant discovery abuse in this case.

Plaintiff has detailed the history of PRA's discovery abuse in this case in numerous motions previously filed with this Court, including:

- Plaintiff's First Motion to Compel (Doc. No. 21) filed April 8, 2014

- Plaintiff's Second Motion to Compel and for Contempt Sanctions (Doc. No. 30) filed May 16, 2014 and supplement thereto (Doc No. 31) filed May 18, 2014

- Plaintiff's Emergency Motion to Amend Deadlines (Doc. No. 41) filed May 30, 2014

- Plaintiff's Motion for Sanctions (Doc. No. 54) filed Sept. 12, 2014

- Plaintiff's Emergency Motion to Extend Deadline for Additional Briefing (Doc. No. 74) filed October 13, 2014

Accordingly, Plaintiff incorporates by this reference each of the foregoing motions, including the facts set forth therein.

Not only does the evidence PRA finally produced in October 2014 support Plaintiff's proposed amendment to the complaint, it also reinforces the fact that PRA has consistently hidden critical evidence at every stage of this case:

Plaintiff served PRA with discovery requests on December 3, 2013.  *See* Docket No. 21-1, <u>Exhibit</u> <u>A</u> at p. 1-13.  PRA served its discovery responses on December 30, 2013, which included heavily redacted copies of account records documenting calls placed to Plaintiff's work place.  *See* Docket No. 21-1, <u>Exhibit</u> <u>B</u> at p. 14-53.  PRA initially produced only seven recordings, although all recordings were requested.  Importantly, several of the entries in the account notes prior to September 22, 2011 were redacted, including the "smoking gun" conversation Plaintiff had with PRA on September 14, 2011:[1]

---

[1] Defendant did not provide a privilege log explaining the redactions on December 30, 2013, or in response to Plaintiff's counsel's repeated requests.  Further, Defendant redacted the record of a telephone call placed by Defendant to Plaintiff on September 14, 2011 where, it turns out, Plaintiff (1) stated that he did not owe the debt Defendant was attempting to collect, and (2) was currently in bankruptcy.

9/22/2011 2:29:04 PM          DB    NA    Dialed (956-393-6200)No Answer



Plaintiff's counsel repeatedly demanded that PRA produce unredacted copies of the account records.  Plaintiff's counsel even offered to enter into an agreed protective order, but never received a response from PRA's counsel.  Meanwhile, PRA amended its discovery responses on January 22, 2014 and March 4, 2014, but refused to provide Plaintiff with the unredacted account records.  *See* Docket No. 21-1, <u>Exhibit</u> <u>F</u> at p. 65-72, and Docket No. 21-1, <u>Exhibit</u> <u>J</u> at 21-2, p. 1-40.

Plaintiff filed a motion to compel on April 8, 2014, due to PRA's continued discovery abuses.  *See* Docket No. 21.

On April 29, 2014, PRA's counsel provided less redacted copies of the account records in question to Plaintiff's counsel at the first deposition of PRA's corporate representative, Timothy Rees.  *See* Docket No. 30-3, <u>Exhibit</u> <u>J</u>.  The documents produced on April 29, 2014 partially disclosed the September 14, 2011 telephone call for the first time:[2]

---

[2] Even though PRA provided less redacted versions of the account records, the records still contained a significant number of redactions.  Further, PRA did not produce the recording of the September 14, 2011 call, or other calls between Plaintiff and PRA.

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**                    **PAGE 4**

| | | | |
|---|---|---|---|
| 9/22/2011 2:29:04 PM | | DB | NA | Dialed (956-393-6200)No Answer |
| | | | | Dialer Dialed Business: ████4800,,,,,LANE LINE 956-393-6200 EGGLEBURG OFFICE ......SD THIS IS THE WRONG OFFICE R- E- |
| 9/14/2011 10:15:08 AM | PRH100 | DB | STC | P-SW N1 SD HE DOES NOT HAVE THIS ACCT ...ADV NEED TO GET VERIFY HE REFUSED SEVERALS TIMES ....."RE-ED-N1" A- I- R- |
| 9/12/2011 2:37:13 PM | | DB | NA | Dialed (████4800)Answering machine |
| 9/8/2011 3:28:27 PM | SLS | ARS | INS | Phone number ████2602 received from LexisNexis. |
| 9/8/2011 11:52:53 AM | SLS | ARS | INS | Phone number ████4800 received from LexisNexis. |
| 6/18/2011 2:04:52 PM | | DO | NA | Dialed ████6792)Answering machine |

On April 30, 2014, the Court entered an order requiring PRA to promptly produce unredacted versions of the account records.  Docket No. 23.

PRA filed its motion for summary judgment on May 9, 2014.  Docket No. 25.  On May 16, 2014, Plaintiff filed a second motion to compel based on PRA's failure to comply with the Court's April 30, 2014 order.  *See* Docket No. 30.  Plaintiff filed a supplement to his second motion to compel on May 18, 2014.  Docket No. 31.

On May 19, 2014, PRA produced some unredacted account records, but did not produce all of the account records it had previously produced.  Additionally, a large stamp was placed on every page of the production, making it difficult for Plaintiff's counsel to read the unredacted records that were produced:[3]

---

[3] *See also* Docket No. 36.

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**                                    **PAGE 5**



On May 20, 2014, the Court held a telephonic hearing on Plaintiff's second motion to compel. At the conclusion of the hearing, the Court ordered PRA to produce all documents necessary to comply with the Court's April 30, 2014 order in full by June 3, 2014, and allowed Plaintiff to retake the deposition of PRA's corporate representative(s).

On May 20, 2014, PRA produced a set of unredacted account records, which fully revealed the details of the September 14, 2011 "smoking gun" telephone call between PRA and Plaintiff for the first time:

| 9/22/2011 2:29:04 PM | | DB | NA | Dialed (956-393-6200)No Answer |
|---|---|---|---|---|
| 9/14/2011 10:15:08 AM | PRH100 | DB | STC | Dialer Dialed Business: 956-447-4800,,,,,LANE LINE 956-393-6200 EGGLEBURG OFFICE ......SD THIS IS THE WRONG OFFICE R- E- P-SW N1 SD HE DOES NOT HAVE THIS ACCT ...ADV NEED TO GET VERIFY HE REFUSED SEVERALS TIMES ....."RE-ED-N1" A- I- R- |
| 9/12/2011 2:37:13 PM | | DB | NA | Dialed (956-447-4800)Answering machine |
| 9/8/2011 3:28:27 PM | SLS | ARS | INS | Phone number 956-968-2602 received from LexisNexis. |
| 9/8/2011 11:52:53 AM | SLS | ARS | INS | Phone number 956-447-4800 received from LexisNexis. |
| 8/18/2011 2:04:52 PM | | DO | NA | Dialed (956-684-6792)Answering machine |

Plaintiff took a second deposition of Timothy Rees on June 16, 2014. During that deposition, PRA's corporate representative Timothy Rees revealed that PRA *did* have recordings of communications between Plaintiff and PRA that it had not produced, specifically the call that produced the "smoking gun" account notes. *See* Docket No. 54-2, Exhibit G at, p. 87-88, 90-91.

When Plaintiff's counsel asked the witness why those recordings had not been produced, PRA's counsel interjected, insisting that Plaintiff had not requested the recordings in discovery and then refused to produce such recordings because "discovery is closed." *See id.*

Consequently, on September 12, 2014, Plaintiff filed his motion for sanctions against PRA due to its continued discovery abuses, including its failure to produce the recordings it now admitted to having. Docket No. 54. Further, PRA's counsel admitted at the September 17, 2014 face-to-face pre-trial meeting that PRA was in possession of the recording of the September 14, 2011 telephone call between Plaintiff and PRA, and that Plaintiff did, in fact, inform PRA of his bankruptcy filing on the recording.

On September 22, 2014, Plaintiff's counsel sent Defendant's counsel an email regarding the calls from PRA that Plaintiff was still receiving at his nursery (956-682-2103). In subsequent e-mails, Plaintiff's counsel continued to notify Defendant's counsel that PRA was still calling Plaintiff. Thus, PRA's assertion in its response to Plaintiff's motion to amend that Plaintiff "never knew" about the post-suit additional calls, is false.

The Court held a pre-trial conference on September 29, 2014. At the conference, the Court scheduled oral arguments on PRA's summary judgment motion for October 20, 2014, with the parties to file trial briefs on questions posed by the Court one week in advance, provided that discovery was completed timely. The Court indicated that it understood that discovery was not complete and noted that Plaintiff might need to amend the complaint. The Court also issued a warning to PRA that the Court might impose severe sanctions.

Then, during the week of October 6, 2014, PRA provided to Plaintiff, *for the first time*, a significant amount of new factual information that dramatically altered the trajectory of the lawsuit:

| Tuesday, October 7, 2014: | Rees declaration with redacted account records of four more persons with PRA accounts with Plaintiff's phone number. |
| | Recordings of calls on 09/14/2011, 01/27/2012, 01/23/2012, and 12/21/2011. |

| Wed., October 8, 2014: | Recording of call on 09/27/2011. |

| Thursday, October 9, 2014: | Rees declaration with unredacted account records of the four more |
| (at 4:38 p.m.) | persons with PRA accounts with Plaintiff's phone number. |
| | Recordings of calls on 12/13/13, 02/06/2014, 02/03/2014, 03/21/2014, 08/23/13, 04/05/2014, 04/08/2014, 04/11/2014, 11/21/2012, 11/04/2011, 12/21/2011, 10/14/2011, and 11/11/2011. |

| Friday, October 10, 2014 | Recordings of calls on 10/9/2013, 06/18/2013, 06/07/2013, |
| (at 4:32 p.m.) | 06/13/2013, 07/10/2013, 01/25/2013, 03/14/2013, 03/08/2013, 03/19/2013, 04/02/2013, 05/06/2013, 05/20/2013, 05/22/2013, 09/04/2013, 09/06/2013. |

Plaintiff's review of the account records PRA produced reveals that PRA has placed at least 948 calls to numbers belonging to or associated with Plaintiff, 924 of which occurred after September 14, 2011, when Plaintiff informed PRA of his bankruptcy and denied owing the debt PRA was attempting to collect.   The records also reveal that PRA called Plaintiff at least 217 times after Plaintiff filed suit:

| Plaintiff's Number that PRA Called | Number Type | Number of Times Called |
| --- | --- | --- |
| 956-682-2103 | Lopez Nursery | 393 |
| 956-631-2964 | Plaintiff's Home Phone | 167 |
| 956-585-4325 | Olga's Baskets & Flowers | 14 |
| 956-682-7438 | Plaintiff's Former Home Phone | 251 |
| 956-393-6200/956-447-4800 | Plaintiff's Employer | 123 |

Further, the records PRA produced in October, 2014, reveal that PRA often called Plaintiff multiple times a day, even as many as five times a day in some instances.

On October 9, 2014, Plaintiff's counsel sent PRA's counsel an email requesting that PRA withdraw its summary judgment motion in light of the fact that the documents and PRA has now

produced directly contradict statements made in the motion for summary judgment and reply, are materially misleading or are otherwise detrimental to PRA's defenses.  *See* Docket No. 74 at p. 3-4.  PRA has not withdrawn its motion for summary judgment.  Rather, in PRA's response to Plaintiff's motion to amend complaint, PRA has once again doubled-down on its summary judgment position in this case, despite PRA's misrepresentations of fact in the motion for summary judgment.

> **B.**     **PRA continues its practice of blatantly misleading the Court and misrepresenting the facts of this case in its Response to Plaintiff's motion to amend complaint.**

Right out of the gate, in the very first numbered paragraph of its Response, PRA misrepresents to the Court that PRA was told in a phone call in 2009 "that the non-bankrupt debtor could be reached [at Plaintiff's work number]."  This allegation is absurd on its face, since no one by the name of Marco Lopez (i.e. the "non-bankrupt debtor") worked at South Texas Rio Grande Legal Aid at that time.  Rather, it is clear that the person PRA's representative spoke to, like Plaintiff, misunderstood who PRA was asking for and assumed that PRA meant to be looking for Plaintiff, Marcos Lopez, who was the only person employed by South Texas Legal Aid with a similar-sounding name.

In the very next paragraph, paragraph 2 of the Response, PRA continues to mislead: In the quoted sections of Plaintiff's deposition, Plaintiff testified that every time PRA called him, the caller requested "Marco" and acknowledged that his name was not Marco.  *See* Docket No. 25 at p. 3-6.  However that testimony does not mean Plaintiff always knew PRA was trying to contact someone other than himself, as alleged in Paragraph 2.  Rather, as the amended Complaint makes clear, at p. 10 ¶40, after May or June of 2012, Plaintiff believed that one of his accounts had been transferred to Capital One, and he therefore believed that PRA was attempting to collect on that account when PRA called him on September 7, 2012.  Moreover, while

Plaintiff acknowledged that the name PRA was using was not his name, that is not the same thing as acknowledging that Plaintiff knew PRA was trying to contact someone else.  *See* Docket No. 25 at p. 3-6.

In paragraph 5 of PRA's Response, PRA makes the absurdly false assertion that "Plaintiff's counsel has been aware of all of the background facts in this case from the very beginning."  Docket No. 85, p. 2.  Certainly PRA does not really think Plaintiff's counsel would have looked the other way at PRA's pattern and practice of targeting non-debtors to collect its customers' accounts had Plaintiff's counsel been aware of such a practice from the beginning of this litigation.  Rather, Plaintiff's counsel knew PRA was "relentlessly" calling Plaintiff in gross violation of the automatic stay, and Plaintiff's counsel included allegations in the original complaint regarding specific calls PRA made to Plaintiff that Plaintiff's counsel knew to be factually supported at the outset of this litigation.

In paragraph 6 of PRA's Response, PRA again dissembles about its intent in placing the 168 calls to Plaintiff's work number that are among the calls at issue in this case.  *Id.* at p. 2-3. PRA did not call Plaintiff's employer in "an attempt to contact the non-bankrupt debtor, Marco Lopez."  Rather, these calls were an attempt to collect *on the account of* the non-bankrupt debtor, Marco Lopez.  PRA had no concern about whether it was actually contacting the correct person.

Similarly, PRA continues to assert the same rationale in paragraph 7 of its response, claiming disingenuously that the "telephone calls made to a telephone number at which Plaintiff was reached were for the purpose of contacting someone other than Plaintiff."  *Id.* at p. 3.  PRA's calls to Plaintiff's numbers were made for the purpose of collecting debt, period.  The facts of this case demonstrate that PRA has no concern for whether it contacts the proper party, and that PRA will attempt to collect money from whomever it reaches, regardless of whether it reaches

the correct account debtor.  Specifically, the evidence in this case confirms that PRA continued calling Plaintiff to collect another person's debt despite Plaintiff specifically notifying PRA of his bankruptcy and despite Plaintiff specifically denying being liable on the debt PRA was trying to collect.

Incredibly, in paragraph 9 of its response, PRA makes the false claim that Plaintiff knew that it was trying to contact Marco Lopez and not Plaintiff.  *Id.* at p. 4.  In the early contacts between PRA and Plaintiff, it is true that Plaintiff knew he did not owe the debt PRA was trying to collect, and that Plaintiff specifically told PRA that he did not owe the debt.  However, that knowledge does not translate into knowledge that PRA was trying to contact someone else. Nothing in this case supports such a claim.  Did Plaintiff know his name was not Marco? Certainly.  Does that mean he "knew" PRA was trying to contact someone else when its representatives asked for Marco Lopez?  Of course not.

Then, in paragraph 11 of PRA's Response, PRA makes the inexplicable and patently false claim that "the basis of Plaintiff's complaints from the beginning and continuing into the proposed amended complaint are based upon telephone calls occurring in the summer of 2012, and earlier ...".  *Id.*  The amended/supplemental complaint encompasses all of the calls PRA has thus far disclosed that were made to Plaintiff's phone numbers post-petition, including calls before 2012, calls as recent as October 2014, and hundreds of calls in between, many of which were only first disclosed by PRA in October of 2014.

Even in the argument section of PRA's Response, PRA continues to misrepresent facts in absurd ways.  For example, at paragraph 23, PRA insists that its repeated communications with Plaintiff were actually communications with "Marco Lopez and not Plaintiff."  *Id.* at p. 9.  Then, at paragraph 24, PRA claims that Plaintiff allegedly did not know about its harassing calls until

October 2014.  *Id.*  This is a particularly galling misstatement, as Plaintiff's counsel had been engaged in extensive email and telephone correspondence with PRA's counsel requesting that PRA stop calling Plaintiff since September 22, 2014.  Next, at paragraph 25, PRA contends that its *hundreds of post-petition phone calls* to Plaintiff's phone numbers could not have been harassing because Plaintiff did not answer the telephone.  Docket No. 85 at p. 9.  Plaintiff would submit that just about anyone who receives hundreds of unwanted phone calls will find such calls harassing, particularly after having already informed the caller that the person being called is in bankruptcy, as was the case here.

### III.
### ARGUMENT

**A.     The Federal Rules require liberal amendments to pleadings.**

Rule 15(a) declares that leave to amend a pleading shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "[T]his mandate is to be heeded."  *Foman v. Davis*, 371 U.S. at 182.  *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981)(citing *Foman v. Davis*, 371 U.S. at 182)(federal rules require the liberal grant of amendments to pleadings).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. at 182.

Rule 15(a)(2) evidences a bias in favor of allowing amendments.  *Dussouy*, 660 F.2d at 597.  Although the appellate court reviews the trial court's exercise of discretion in its determination as to whether to allow amendments, the term "discretion" is misleading, "for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.'"  *Id.* at 597-98.  The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from

becoming a technical exercise in the fine points of pleading.  *Id.* at 598 ("Thus, unless there is a *substantial reason* to deny leave to amend, the discretion of the district court is not broad enough to permit denial" *Id.*)(emphasis added)(citing *Lone Star Motor Import v. Citroen Cars*, 288 F.2d 69, 75 (5th Cir. 1961)).

>   **B.   Plaintiff was not required to plead all causes of action at the time he filed his suit**.

PRA's primary argument is that Plaintiff should not be able to amend to add causes of action pursuant to the FDCPA, the TDCA, and other law because Plaintiff allegedly knew of additional pre-suit calls at the time he filed the lawsuit, and Plaintiff was thus required to plead those causes of action at that time, or be precluded from pleading those causes of action later. *See* Docket No. 85 ¶ 5, 6, 11, and 18.  Defendant cites no case law in support of these assertions, s*ee id.*, and, in fact, PRA wholly fails to cite the Court to controlling Supreme Court precedent that rejects this argument outright.  *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014)(per curiam).

In *City of Shelby*, the district court refused plaintiffs' request to amend their complaint to add a 42 U.S.C. § 1983 count after the court had entered judgment against plaintiffs on defendant's motion for summary judgment.  *See Johnson v. City of Shelby, Miss.*, 743 F.3d 59, 61 (5th Cir. 2013), reversed, *Johnson v. City of Shelby, Miss*., 135 S.Ct. 346 (2014).  On appeal, the Fifth Circuit ruled that the district court had not abused its discretion in refusing to allow plaintiffs to amend their complaint to invoke 42 U.S.C. § 1983.  *City of Shelby*, 743 F.3d at 62 – 63.  Among other things, the Fifth Circuit noted that plaintiffs had not even filed their motion for leave to amend until after the defendant filed its motion for summary judgment and the court entered judgment.  *Id*.  The Fifth Circuit ruled that neither the court nor the City need be subjected to successive theories of the plaintiffs' case.  *Id*.

The United States Supreme Court granted plaintiffs' petition for certiorari, summarily reversed the Fifth Circuit, and remanded for proceedings consistent with the opinion. *City of Shelby*, 135 S.Ct. at 346 – 47. The Court noted that petitioners' complaint was not deficient factually. "Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* Importantly, the Supreme Court sternly reminded the Fifth Circuit:

> The Federal rules effectively abolish the restrictive theory of the pleadings doctrine, *making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.*

*Id.* (emphasis added) (quoting 5 Wright & Miller, supra, § 1219, at 277-278); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

Here, in his original complaint, Plaintiff alleged that PRA called him "relentlessly" and set forth information that Plaintiff remembered about some of the calls. *See* Docket No. 1. This put PRA on notice that Plaintiff was seeking damages against PRA based on debt-collection telephone calls PRA made to Plaintiff pre-suit. Plaintiff thus must be allowed to amend to assert the additional causes of action pursuant to *City of Shelby*. Moreover, the court should permit Plaintiff to amend or supplement the complaint with the calls that PRA made to Plaintiff's phone numbers subsequent to the filing of the original complaint. Fed. R. Civ. P. 15(d). *See, e.g., S.E.C. v. First Jersey Securities, Inc.*, C.A.2 (N.Y.) 1996, 101 F.3d 1450, certiorari denied 522 U.S. 812 ("If a defendant engages in actionable conduct after lawsuit is commenced, plaintiff may seek leave to file supplemental pleading to assert claim based on the subsequent conduct, but he is not required to do so.").

### C.   Plaintiff's claims are not barred by the statue of limitations.

PRA's next argument appears to be that Plaintiff should not be allowed to amend to add certain of his FDCPA and TDCA act claims because any such amendment would be "futile." Docket No. 85 at ¶ 14.  The reason such claims would be "futile" is that such claims allegedly are barred by the statute of limitations.  *See, e.g.*, Def's Response at ¶ 14 – 21.

Plaintiff brings FDCPA claims pursuant to 15 U.S.C. §§ 1692a, 1692b(2), 1692b(3), 1692c(a)(1), 1692c(a)(2), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(2) and (10), 1692f, 1692f(1), and 1692k.  *See, e.g.*, Amended Complaint, ¶ 79, 82 – 95.

PRA asserts only that Plaintiffs claims pursuant to 15 U.S.C. §§ 1692(b)(2), 1692(b)(3), 1692c(a)(1), and 1692c(a)(3) are barred by the statute of limitations, because, allegedly, those statutes all require that PRA have actual conversations with Plaintiff on PRA's collection calls.  Def's Response at ¶ 21.  PRA cites no case law whatsoever for this proposition, *see id.*, and thus it should be rejected.

Importantly, PRA does not make any specific argument that Plaintiff's claims pursuant to §§ 1692a, 1692c(b), 1692d, 1692d(5), 1692e, 1692f, 1692f(1) and 1692k are barred by the statute of limitations.  *See id.*  As such, the Court certainly should allow Plaintiff's amendments based on those claims.[4]  Moreover, PRA does not argue that the hundreds of calls PRA made to plaintiff post-suit are barred by the statute of limitations.

### 1.    PRA is liable for calls that Plaintiff did not answer.

PRA's underlying premise for its statute-of-limitations arguments is that the only

---

[4] PRA also argues that Plaintiff cannot assert claims pursuant to §§ 1692b and 1692c because they belong only to the "consumer."  However, the term "consumer" applies not only to persons obligated, but also to persons "allegedly but not actually obligated to pay the debt.  § 1692a(3) provides, "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt".  *See, e.g.*, *Dunham v. Portfolio Recovery Assocs., L.L.C.*, 663 F.3d 997 (8th Cir. 2011)(plaintiff entitled to invoke FDCPA's verification protections and had standing to sue because a "consumer" includes an individual that, as here, debt collectors mistakenly dun, or who does not owe debt); *Velazquez v. NCO Fin. Sys. Inc.*, 2011 WL 2135633 (E.D. Pa. 2011)("demanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law").

"actionable" calls under the FDCPA are the ones in which Defendant had an actual conversation with Plaintiff.   PRA then argues that either the first (the September 14, 2011 call) or last telephone call in which a conversation allegedly occurred started the statute of limitations.   *See* Def's Response at ¶ 14, 19-21.  The subsequent calls are not actionable, according to PRA.

PRA does not cite any case that holds only answered calls are actionable under the FDCPA.  Such assertion is absurd and certainly fails, especially with respect to Plaintiff's 15 U.S.C. § 1692d, § 1692d(5), § 1692e and § 1692f claims.   Indeed, similar arguments have been rejected many times.  *See, i.e.*, *Swearingen v. Portfolio Recovery Associates, LLC*, 892 F. Supp. 2d 987, 994 (N.D. Ill. 2012); *Clark v. Owick Collet, Inc.*, 2005 WL 1586862 (D. Or. June 30, 2005)(denying summary judgment to collector where it had called multiple times without leaving messages); *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 233-34 (11th Cir. 2011)("We reject Franklin's contention that its telephone calls were not harassing because Meadows did not answer them.").   Indeed, the plain language of § 1692d prohibits 'causing a telephone to ring …with intent to annoy, abuse or harass."  *Id.*  The statute itself recognizes that answering the phone is not necessary for there to be harassment.  *Id.  See also, Swearingen*, 892 F.Supp at 992-93 (central issue under § 1692d(5) is whether "the volume and pattern of calls demonstrates an intent to contact debtors rather than an intent to annoy, abuse or harass them," and, with respect to 1692d, the only question is whether the "natural consequence" of the collector's conduct was to "harass, oppress, or abuse" Plaintiff.)

Moreover, it is outrageous for PRA to first hide all, and then most of the evidence of the September 14, 2011 and October 14, 2011 calls, and hundreds of other calls, for the entire case up until the trial setting, and then argue that Plaintiff is now barred from asserting claims by

reason of the statute of limitations based on those very calls.[5]

Plaintiff claimed from the beginning that Plaintiff initially told PRA that he was in bankruptcy, told PRA that he did not have the accounts that PRA was trying to collect from him, and that PRA was not allowed to call him at work. Defendant did not produce the recordings of these calls (despite the fact that all recording were asked for in Plaintiff's December 2013 discovery) ***until October 7 – 9, 2014***, after numerous motions to compel and for sanctions with respect to discovery, discovery hearings, this Court's sanctions against PRA for discovery abuse, and finally, at the September 29, 2014 pre-trial hearing, this Court's threats of additional severe sanctions.

Importantly for Plaintiff's claims under the FDCPA and TDCA, these "smoking gun" recordings confirm what Plaintiff asserted all along – that he indeed personally told PRA that he was in bankruptcy (and PRA continued to call him anyway), personally told PRA that he did not owe the accounts that PRA was trying to collect from him (and PRA continued to call Plaintiff anyway), and personally told PRA that PRA was not allowed to call him at work (and PRA continued to call Plaintiff at work anyway.)

> **2.    Plaintiff has claims pursuant to the FDCPA for PRA's phone calls to Plaintiff in its attempt to collect other persons' debts.**

In a somewhat related argument, PRA asserts, again without citations to authority, that it cannot be liable to Plaintiff on any theory because it was trying to reach someone else (Marco Lopez), to collect someone else's debt (that of Marco Lopez). That argument is disingenuous

---

[5] Audaciously, PRA ignores its gross discovery violations in connection with this argument. As noted above, with respect to the call in which Plaintiff informed PRA that he was in bankruptcy, the September 14, 2011 call, PRA (1) first hid the existence of this call by redacting the information about the call from the account records it produced. PRA then failed to produce the recording of the call or even disclose its existence until April 19 of 2014. On June 16, 2014, at the second deposition of PRA ordered by the Court as a sanction, PRA's representative finally admitted that a recording of the call existed, which had never been produced. Even then, counsel for PRA refused to produce the recording on the grounds that Plaintiff allegedly did not ask for it (Plaintiff did, in December 2013) and that discovery was over! *See* Plaintiff's Motion for Sanctions, Docket no. 54 at pp. 22-23. PRA did not produce the recording of the September 14, 2011 call until October 7, 2014.

given the recently-produced recordings evidencing the fact that Plaintiff told PRA in the initial conversations that he was not the account holder on the debt in question.

Moreover, in addition to the Marco Lopez debt, the documents produced in October 2014 show that PRA called Plaintiff hundreds of times seeking also to collect the debts of Linda Lopez and Marcos Lopez, Jr., in addition to the debt of "Marco Lopez."

In any event, PRA is wrong on the law. The enforcement provision of the FDCPA imposes liability on any debt collector who fails to comply with the statute's provisions "with respect to *any* person." 15 U.S.C. § 1692k(a) (emphasis added). Consequently, absent a limitation in the substantive provisions of the FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute. *Swearingen*, 892 F.Supp. 2d 987 ("By its plain language then, the FDCPA provides relief for debtors as well as non-debtors, …"). *See also Dunham*, 663 F.3d at 1001 (8th Cir. 2011)(noting that while certain provisions of the FDCPA restrict the scope of its application by using the word "consumer," other provisions apply broadly to "any person"). *See Rawlinson v. Law Office of William M. Rudow, LLC,* 460 Fed. Appx. 254, 258 (4th Cir. 2012)(holding that the FDCPA may provide relief for a debtor's aunt). *Cf. Wright v. Fin. Serv. of Norwalk, Inc.,* 22 F.3d 647, 649–50 (6th Cir. 1994). *See also Beck v. Maximus, Inc.,* 457 F.3d 291, 294 (3rd Cir. 2006)(noting that the FDCPA "is intended to protect both debtors and non-debtors from misleading and abusive debt-collection practices"). *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir. 1985); *see also Flowers v. Accelerated Bureau of Collections, Inc.,* 96 C 4003, 1997 WL 136313, at *7–8 (N.D. Ill. Mar. 19, 1997)(noting that "[m]any courts have held that 'person' includes non-debtors who have nonetheless been harmed by an improper debt collection practice"); *Villareal v. Snow,* 1996 WL 28254, at *2 (N.D. Ill. Jan. 19, 1996)("The courts have confirmed that even persons other than a consumer may sue for

violations of the FDPCA according to the broad language of 15 U.S.C. § 1692k(a).").  *Cf. Keele*

*v. Wexler*, 149 F.3d 589, 595–96 (7th Cir. 1998)(holding that the phrase "any person" should not

be construed narrowly to exclude debtors who willfully refuse to pay valid debts).

 The legislative history of the FDCPA endorses this reading of the statute and is directly

applicable here:

> This bill also protects people who do not owe money at all.  In the collector's
> zeal, collections effort[s] are often aimed at the wrong person either because of
> mistaken identity or mistaken facts.  This bill will make collectors behave
> responsibly towards people with whom they deal.  Another group of people who
> do not owe money, but who may be deliberately harassed are the family,
> employer and neighbors of the consumer.  These people are also protected by
> this . . . bill.

*Dutton v. Wolhar*, 809 F.Supp. 1130, 1134–35 (D. Del. 1992)(quoting H.R.Rep. No. 131, 95th

Cong. 1st Sess. 8)(holding that, in enacting the FDCPA, "[i]t was Congress's intent to protect

people other than debtors ... who are subject to harassment by debt collectors").

 Thus, even if PRA was attempting to reach someone else on someone else's debt, PRA's

actions can be violations of the FDCPA.  Certainly those calls can be violations if PRA made

calls to Plaintiff after being told that the account was not his and that he was in bankruptcy.

Indeed, PRA's lack of reasonableness with respect to its calls to Plaintiff turns, in part, on what

Plaintiff told PRA in those initial calls.  *See Meadows*, 44 Fed.Appx. at 231-35 (district court

erred in granting summary judgment to collector where it called Plaintiff multiple times after she

told them she did not owe the debt and where collector was actually calling on the accounts of

Plaintiff's daughter and a third party).  *See also, Carter v. CBE Group, Inc.*, 2014 WL 502388

(S.D. Tex. February 7, 2014)(refusing to grant Rule 11 sanctions against plaintiff where plaintiff

did not owe the debt, but collector had associated plaintiff's phone number with four other

people named Carter who actually did owe the debt, and called plaintiff at that phone number on those accounts of the other Carters.).[6]

Thus, what Plaintiff said to Defendant on calls prior to the start of the statute of limitations directly relate to the reasonableness of PRA's calls to Plaintiff during the statute (which, again, highlights the outrageousness of PRA hiding evidence and recordings with respect to some of these calls).

### 3. PRA does not even oppose Plaintiffs seeking to amend to assert his § 1692f claim.

Of course, PRA's apparent policy to purposely demand and collect money from people who do not owe the debts constitutes a grossly unfair and unreasonable means to collect a debt. PRA does not even oppose Plaintiff's amendment to add § 1692f claims, so those certainly should be allowed.

Finally, contrary to PRA's assertions, Plaintiff is not required to prove actual damage to obtain statutory damages or attorneys' fees under the FDCPA. *Smith v. ProCollect, Inc.*, 2011 WL 1375667 at *7 (E.D. Tex. April 12, 2011). With respect to the TDCA, Plaintiff is seeking injunctive relief, and success on that claim alone entitles Plaintiff to reasonable attorneys' fees. Moreover, Plaintiff has incurred actual economic damages and has so alleged, and that is a matter to be proven at trial. *See, e.g.*, Amended Complaint at ¶ 94, 104, 108. Plaintiff is thus not seeking damages only for "mental anguish," so PRA's arguments at ¶ 30-40 are inapposite.

---

[6] In *Carter v. CBE*, when the collector reached plaintiff and learned that he was the wrong person, the collector deleted that phone number from that particular account, but not from the three other accounts with plaintiff's phone numbers. Rather, it kept calling the number with respect to the other accounts until told again, on each one, that the phone number was wrongly associated with that account.

In contrast, here, when Plaintiff told PRA that he did not owe the debt, and that he had filed for bankruptcy, PRA *did not* remove Plaintiff's phone numbers from the Marco Lopez account, and continued to call that number until Plaintiff filed this suit. PRA also did not remove plaintiff's phone numbers from other persons' accounts when it had the ability to do so, and continued to call Plaintiff on those other persons' accounts.

# IV.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court grant Plaintiff's motion for leave to amend Plaintiff's original complaint, and all such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

ARMSTRONG KELLETT BARTHOLOW PLLC

*/s/   Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")
Texas Bar No. 24062602
Southern District Bar No. 1571898
Karen L. Kellett
Texas Bar No. 11199520
Southern District Bar No. 26490
Caitlyn N. Wells
Texas Bar No. 24070635
Southern District Bar No. 2043070
11300 N. Central Expy., Ste. 301
Dallas, Texas 75243
Tel. (214) 696-9000
Fax (214) 696-9001
thad@akbpc.com

Ellen C. Stone
State Bar No. 19305000
Southern District Bar No. 7081
THE STONE LAW FIRM, P.C.
4900 N 10th St# A2
McAllen, TX 78504
(956) 630-2822 - Telephone
(956) 631-0742 – Telecopy

ATTORNEYS FOR MARCOS LOPEZ

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2015, a true and correct copy of the foregoing was served on the parties listed below via electronic mail.

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")

Keith Wier
Ed Walton
Bush & Ramirez, P.L.L.C.
Bryan Tower
5615 Kirby Dr., #900
Houston, TX  77005