

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
03/12/2015

| | | |
|---|---|---|
| IN RE: § | | |
| MARCOS F. LOPEZ; aka LOPEZ; dba § | CASE NO: 09-70659 | |
| LOPEZ NURSERY & LANDSCAPING; aka § | | |
| OLGA'S BASKETS & FLOWERS; aka § | | |
| LOPEZ, *et al* § | | |
|     Debtor(s) § | | |
| § | CHAPTER 13 | |
| § | | |
| MARCOS F. LOPEZ § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 13-07019 | |
| § | | |
| PORTFOLIO RECOVERY ASSOCIATES, § | | |
| LLC. § | | |
|     Defendant(s) § | | |

## MEMORANDUM OPINION

Marcos Lopez seeks to amend his complaint to add causes of action for violations of the Fair Debt Collection Practices Act (FDCPA), violations of the Texas Debt Collection Act (TDCA), and for the common law tort of unreasonable debt collection. Portfolio Recovery Associates, LLC has filed a response to the motion on the grounds of futility under *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). Lopez must file a second proposed complaint by March 31, 2015.

One of the key issues in this adversary proceeding concerns identity confusion. The Plaintiff is Marcos Lopez. Portfolio Recovery Associates claims that it was seeking recovery on debts owed by Marc*o* Lopez, not Marc*os* Lopez.

Although Portfolio wishes to be relieved of all liability for attempting approximately 1,000 communications with Marcos Lopez because it now claims that Marcos Lopez owes

nothing to Portfolio, the Court will not allow such absolution until there has been a full exposition of the facts that would justify amnesty for Portfolio's alleged conduct.

## Factual Background

*Events Preceding the Filing of Plaintiff's Original Complaint*

Marcos Lopez filed a chapter 13 bankruptcy on September 14, 2009. (Case No. 09-70659; ECF No. 1). In his schedules, Marcos Lopez listed four Capital One entities as unsecured creditors. He also listed debt to HSBC Bank arising from two credit card accounts. (ECF No. 1-1 at 32). HSBC filed two proofs of claim. (ECF No. 1 at 6). On January 2, 2010 PRA Receivables Management, LLC, as agent of Portfolio Recovery Associates, LLC filed two "Transfer[s] of Claim Other than for Security" with the Court giving notice that the two HSBC proofs of claim were transferred to Defendant. (ECF No. 1-1 at 65, 67). In May or June of 2012, Marcos Lopez received a letter from Union Plus stating that "On or about May 1, 2012, Capital One, N.A. ("Capital One") purchased the Union Plus credit card accounts from HSBC Bank Nevada, N.A. ("HSBC"). This means Capital One® is now the issuer of your account." (ECF No. 1-1 at 69).

Prior to receiving the Union Plus letter, Marcos Lopez began receiving frequent phone calls from persons describing themselves as employees of "Portfolio Recovery" starting on September 14, 2011. (ECF No. 73-1 at 8). Marcos Lopez alleges that he received a phone call on October 14, 2011 from a Portfolio employee who stated she was calling for "Marco Lopez" in regards to Capital One debt. *Id.* Marcos Lopez further alleges that on September 7, 2012 he received a call from a Thomas Harper in reference to two Capital One accounts. (ECF No. 1). Harper demanded immediate payment and offered to settle the entire account if Marcos Lopez agreed to pay Portfolio three payments of $90.00. Lopez responded that he needed time to think

about the offer. Portfolio employees called Marcos Lopez three more times in the fall of 2012 seeking payment on the Capital One accounts. Due to his receipt of the Union Plus letter, Marcos Lopez alleges that he believed the calls were in reference to his Capital One debt, not that of Marco Lopez. (ECF No. 73-1 at 10).

*Plaintiff's Original Complaint and Discovery*

Marcos Lopez commenced this adversary proceeding on October 2, 2013, alleging violations of the automatic stay and of his confirmed bankruptcy plan. (ECF No. 1 at 11). Portfolio filed an answer on November 18, 2013. (ECF No. 11). In its answer, Portfolio admitted leaving several messages on Marcos Lopez's phone, but denied that it was trying to reach Marcos Lopez. On November 22, 2013 the parties filed a Joint Discovery/Case Management Plan. (ECF No. 13). Discovery quickly proved to be contentious. On April 8, 2014, Marcos Lopez filed a motion to compel, claiming that Portfolio was hindering its attempt to discover the truth regarding Portfolio's defense of mistaken identity by excessively redacting documents. (ECF No. 21 at 1-2). The Court ordered Portfolio to turn over unredacted versions of the documents. (ECF No. 23).

On May 9, 2014 Portfolio filed a motion for summary judgment. (ECF No. 25). Portfolio alleged that in 2007 it purchased from Capital One an account for one Marc**o** Lopez (not the Plaintiff, Marco**s** Lopez). While attempting to contact Marco Lopez, Portfolio received erroneous information that Marco Lopez could be reached at Marcos Lopez's phone number. Portfolio asserted that it had not willfully violated the automatic stay because it was not attempting to contact Marcos Lopez. In response, Marcos Lopez filed an emergency motion to extend the deadline for responding to the summary judgment motion. (ECF No. 30). Marcos Lopez alleged that Portfolio continued to provide only redacted versions of important documents

such as call logs, that they produced many documents with a bold "Confidential and Proprietary" stamp across all pages making the documents difficult to read, and that Portfolio's designated corporate representative was not an employee of the company during much of the pertinent time period. At a May 20, 2014 hearing, the Court granted the emergency motion and informed counsel for Portfolio that "[y]ou-all are not complying with discovery." (ECF No. 46 at 20).

Marcos Lopez filed its response to the summary judgment motion on June 25, 2014. (ECF No. 51). On September 12, 2014, Marcos Lopez filed a motion for sanctions alleging, *inter alia*, that Portfolio failed to produce a competent corporate representative, that a properly noticed Portfolio employee failed to attend a scheduled deposition, and that Portfolio refused to produce recordings of telephone conversations. (ECF No. 54 at 2). The Court scheduled a hearing for the summary judgment motion and the motion for sanctions for October 20, 2014. However, on October 11, 2014, Marcos Lopez filed a motion for leave to file an amended complaint. (ECF No. 72). The Court issued an order abating the motions for summary judgment and sanctions to allow for additional discovery on October 17, 2014. (ECF No. 77). Portfolio filed a response to the motion to amend on November 24, 2014. Marcos Lopez replied on January 7, 2015. (ECF No. 92).

*Plaintiff's Motion to Amend*

Marcos Lopez contends that he should be allowed to amend his complaint under Fed. R. Civ. P. 15 due to new evidence received as late as October 10, 2014. Specifically, Marcos Lopez received fully unredacted call records and audio recordings of 35 phone calls. Marcos Lopez alleges that the account records indicate Portfolio placed at least 948 calls to numbers associated with Marcos Lopez since 2011. (ECF No. 92 at 8). The amended complaint alleges that many of these calls were made not only in an attempt to reach Marco Lopez, but also in attempts to

reach Marcos Lopez's son and daughter. Portfolio's accounts for the son and daughter listed a phone number for Marcos Lopez's business as a "personal" number. (ECF No. 73-1 at 13). In light of this new evidence, Marcos Lopez requested leave to amend the complaint to allege violations of the Fair Debt Collection Practices Act, violations of the Texas Debt Collection Act, and for the common law tort of unreasonable debt collection. Portfolio argues that granting leave to amend would not be appropriate for two primary reasons. First, it contends that Marcos Lopez's delay in requesting leave to amend was unreasonable because Marcos Lopez always knew the phone calls were made to him by mistake. Second, it contends that any amendments would be futile.

## Analysis

**The Court Would Possess Subject-Matter Jurisdiction Over the Amended Complaint**

"A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject-matter jurisdiction over a case." *Lynch v. Union Pac. R.R. Co.*, 24 F. Supp. 3d 597, 599 (N.D. Tex. 2014) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). Bankruptcy courts have jurisdiction over all cases under title 11, as well "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. The Fifth Circuit has stated that § 1334's language operates "conjunctively to define the scope of jurisdiction." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999).

Proceedings "arising under" the Bankruptcy Code "are only those cases in which a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of

federal [bankruptcy] law." *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship)*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995). A matter is "related to" a case under title 11 if the adversary proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022. An adversary proceeding falls within the court's "related to" jurisdiction if the "outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy. *In re Wood*, 825 F.2d at 93 (emphasis in original). The possibility that the outcome of the lawsuit would have no effect on the bankruptcy estate is not enough to conclude that there would be no conceivable effect. "Certainty or even likelihood of such an effect is not a requirement." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001).

Marcos Lopez's claims for relief in his Original Complaint (which are carried over in the proposed Amended Complaint) are claims that "arise under" title 11. The first claim is for violation of the automatic stay imposed by 11 U.S.C. § 362(a). A claim for relief under § 362(a) is a matter which arises under the Bankruptcy Code for the purposes of 28 U.S.C. § 1334(b). Similarly, Marcos Lopez's claim that Portfolio violated the terms of the plan confirmation order "arises under" title 11 because it invokes a substantive right of the Bankruptcy Code. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 451-52 (Bankr. S.D. Tex. 2008).

The new claims, by contrast, exist entirely independently from bankruptcy and do not arise under title 11. The Court has jurisdiction over these claims because they are "related to" a bankruptcy proceeding. Marcos Lopez is currently a debtor before this Court and has not obtained his discharge. Any recovery by could augment the bankruptcy estate for the benefit of all creditors. Accordingly, Marcos Lopez's potential FDCPA, TDCA, and common law claims

fall within the Court's "related to" jurisdiction. *See, e.g.*, *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 463 (S.D.N.Y. 2011); *In re Porter*, 2014 WL 7339025 at *4 (Bankr. E.D. La. Dec. 22, 2014).

Even if the Court does not possess "related to" jurisdiction over the additional claims, a district court would possess federal-question jurisdiction over the FDCPA claims. *Lee v. Credit Mgmt., LP*, 864 F.Supp.2d 716, 729 (S.D. Tex. 2012). Congress has conferred on the district courts original jurisdiction in federal-question cases. *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 552 (2005). "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a). Because Marcos Lopez's potential state law claims arise from the same case or controversy as his FDCPA claims, a district court would possess supplemental jurisdiction over the state law claims in addition to its federal-question jurisdiction.

**Plaintiff Should Be Granted Leave to File a Second Proposed Amended Complaint**

*Rule 15(a) Standard*

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." A plaintiff is allowed as a matter of right one amendment before any responsive pleadings have been filed. Subsequent amendments are permitted only with leave of the trial judge. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir. 1996) (quoting *Dussouy*, 660 F.2d at 598). A decision to grant leave is within the

discretion of the trial court. *Southmark*, 88 F.3d at 314. In deciding whether to grant leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.* at 314-15. An amendment is futile if it fails to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

*Undue Delay*

Portfolio argues that because Marcos Lopez waited over a year to file his motion to amend, the Court should deny the motion because of undue delay. Portfolio contends that Marcos Lopez *always* knew the phone calls were intended for Marco Lopez, and that the motion to amend is merely a last ditch attempt to save a complaint "that Plaintiff's counsel now realizes . . . should have never been filed." (ECF No. 85 at 16). Essentially, Portfolio claims that Marcos Lopez knew the relevant facts from the beginning and there exists no new evidence to justify the filing of an amended complaint. The Court cannot agree.

On December 30, 2013 Portfolio served the redacted account notes of Marco Lopez, which demonstrate that Portfolio made approximately 168 calls to Marcos Lopez's employer. At this point, Marcos Lopez knew or should have known that at least some of the calls were not actually intended for him. Portfolio seems to contend that Marcos Lopez should have amended or withdrawn his complaint immediately after this discovery because an unintentional violation of the automatic stay may not give rise to sanctions. Even assuming Portfolio's argument is correct,[1] however, there is no indication that Marcos Lopez should have known that *all* calls

---

[1] An unintentional violation of the automatic stay can still be considered willful if the creditor fails to act with reasonable dispatch to correct the violation. *See, e.g., Putnam v. Rymes Heating Oils, Inc. (In re Putnam)*, 167 B.R. 737, 741 (Bankr. D.N.H. 1994); *In re Talsma*, 468 B.R. 809, 817 (Bankr. N.D. Tex. 2012) ("As a general rule, *prompt cure* of its contempt by a party that has unintentionally violated the automatic stay will constitute sufficient


were in fact intended for someone else.  Throughout the case, Portfolio has underperformed in its responses to discovery requests.  For example, Portfolio originally disclosed on December 30, 2013 that it made 168 calls to Marcos Lopez.  But Marcos Lopez now alleges that documents turned over by Portfolio in October of 2014 show that Portfolio called him 948 times.  How can "Plaintiff's counsel [have] been aware of all the background facts in this case from the very beginning," as Portfolio asserts, when Portfolio waited almost six months past the close of discovery to turn over relevant documents?  Given that Portfolio had some part in any delay in filing the motion to amend, it cannot then claim undue delay when objecting to the motion.

     Portfolio also argues that because Marcos Lopez was always aware of the nature of the lawsuit, he forfeited his ability to assert additional causes of action that he should have known existed at the time the original complaint was filed.  Although there was confusion as to whether Marcos Lopez was the intended target, from the very beginning it was obvious to all parties that this case centered around phone calls made for the purpose of debt collection.  Claims under the FDCPA and TDCA were readily apparent even given Marcos Lopez's limited knowledge at the outset of litigation.  But Portfolio has apparently conflated federal pleading standards regarding legal theories with those of factual allegations.

     Federal Rule of Civil Procedure 8(a)(2) mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Prior to the establishment of the federal rules, federal courts generally adhered to the "theory of the pleadings" doctrine, which required plaintiffs to set forth definite causes of action in their complaint and severely limited

---

cure to satisfy the court.") (emphasis added); *In re Stamps*, 2000 WL 1706897 at *5 (N.D. Ill. Nov. 14, 2000) (awarding punitive damages where the defendant unintentionally violated the stay but failed to promptly correct the violation).

their ability to change course mid-litigation. 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1219 (2d ed. 1990). The adoption of the federal rules effectively abolished this restrictive doctrine, allowing plaintiffs to amend complaints even as late as trial. *Id.* Once a plaintiff has set forth the factual basis for their complaint, he generally should be allowed to amend his complaint to include additional causes of action. *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). Portfolio has not contended that the original complaint was deficient in its factual allegations.[2] Accordingly, Marcos Lopez has not forfeited his ability to assert additional causes of action.

*Futility*

Portfolio argues that it would be futile for Marcos Lopez to amend his complaint for two reasons. First, it contends the statute of limitations has expired on each of the causes of action that Marcos Lopez seeks to assert. Second, it argues that Marcos Lopez cannot demonstrate actual damages. The Court will address these arguments in turn.

*The Statutes of Limitations Have Not Expired*

The statute of limitations for the FDCPA is one year from the date on which the alleged violation occurs. 15 U.S.C. § 1692k(d). The statute of limitations for the TDCA is two years. *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 872 (Tex. App. 1998). Because it is an intentional tort, the statute of limitations for unreasonable debt collection is also two years. Tex. Civ. Prac. & Rem. Code § 16.003. The filing of a motion to amend tolls the statute of limitations. *Bradley v. Armstrong Rubber Co.*, 46 F. Supp. 583, 586 (S.D. Miss. 1999) (citing *Rademaker v. E.D. Flynn Export Co.*, 17 F.2d 15 (5th Cir. 1927)). The motion to amend was

---

[2] Portfolio has acknowledged that the facts that Marcos Lopez set forth in the original complaint "at least arguably provided him with the right to recover pursuant to the causes of action which he now seeks to assert." (ECF No. 85 at 7).

filed on October 11, 2014, at which point the limitation period was tolled. Although Plaintiffs have alleged numerous phone calls occurring within both the one- and two-year statutes of limitation, Portfolio argues that unanswered phone calls are not actionable. Because the last *conversation* Marcos Lopez alleges he had with a Portfolio representative was on September 7, 2012, if the Court accepts Portfolio's theory, then the relevant limitation periods have run.

Portfolio's argument fails for two reasons. First, both federal and Texas law provide for the application of the "relation back" doctrine. Federal Rule of Civil Procedure 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. . . ." Similarly, under Texas law the doctrine provides that the new facts or claims relate back to the original filing "unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence. Tex. Civ. Prac. Rem. Code § 16.068. "Relation back is determined by whichever is more forgiving between state law or federal law." *Murthy v. Abbott Lab.*, 847 F. Supp.2d 958, 980 (S.D. Tex. 2012) (citing Fed. R. Civ. P. 15(c) Comm. N. to 1991 Amendment). Although the state and federal tests are similar, courts examining the issue have concluded that the federal rules are more lenient. *See U.S. Bank, N.A. v. Smith (In re Smith)*, 524 B.R. 125, 143 (Bankr. S.D. Tex. 2015); *Murthy*, 847 F. Supp. at 980. Accordingly, the Court will apply the relation back doctrine under federal law.

There is no question that the proposed amendments relate to the same conduct set out in the original pleading. As Portfolio acknowledges, "this case is based upon telephone calls and nothing else." (ECF No. 85 at 6). Application of the relation back doctrine is appropriate. Marcos Lopez filed his original complaint on October 2, 2013. The proposed amended

complaint alleges that Portfolio began calling Marcos Lopez on September 14, 2011, continued calling him until October of 2014, and had a conversation with him on September 7, 2012. Because Marcos Lopez alleges a live conversation with a Portfolio employee occurring within two years of October 2, 2013, neither the TDCA nor the unreasonable debt collection claims would be barred by the statute of limitations.[3] However, even after applying the relation back doctrine, Marcos Lopez has alleged no communications other than unanswered phone calls occurring within *one* year of October 2, 2013. If unanswered phone calls are not actionable under the federal FDCPA, as Portfolio alleges, then the FDCPA claims would be time barred. This brings the Court to the second flaw in Portfolio's argument.

The FDCPA was enacted to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). A debt collector who fails to comply with any FDCPA provision is liable for actual damages, costs, reasonable attorney's fees, and statutory "additional" damages. 15 U.S.C. §1692k(a). Marcos Lopez has alleged Portfolio violated the following FDCPA provisions:

- Section 1692b(2) which states that "any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.

- Section 1692b(3) which states that "any debt collector communicating with any person other than the consumer . . . shall not communicate with any such person more than once unless requested to do so by such person. . . ."

- Sections 1692c(a)(1), (2), and (3) which prevent debt collectors from communicating with a consumer at an unusual time or place, or when the debt collector knows the consumer is represented by an attorney, or at the consumer's place of employment if

---

[3] Any claims under the TDCA or for unreasonable debt collection for phone calls occurring before October 2, 2011 would still be barred by the statute of limitations.

the debt collector knows or has reason to know the employer prohibits such communications.[4]

- Section 1692c(b) which prevents debt collectors from communicating with persons other than the consumer, the consumer's attorney, or credit bureaus.

- Section 1692d which prohibits harassment, oppression, or abuse of any person in connection with debt collection. Causing the phone to ring repeatedly with intent to annoy, abuse, or harass, is considered a violation of § 1692d.

- Section 1692e which prohibits a debt collector from making false or misleading statements in connection with the collection of a debt.

- Section 1692f which prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.

It is immediately apparent that Marcos Lopez's claims under § 1692d do not require any evidence that he actually answered the phone. Section 1692d specifically bars debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Surely a reasonable fact finder could find the almost one thousand phone calls allegedly made by Portfolio to be harassing or annoying, even if Marcos Lopez never picked up the phone. *See, e.g.*, *Sanchez v. Client Servs., Inc.*, 520 F. Supp.2d 1149, 1161 (N.D. Cal. 2007); *Hicks v. Am. Recovery Solutions, LLC*, 816 F. Supp.2d 509, 515 (N.D. Ohio 2011) (holding that the requisite intent to harass or annoy with respect to unanswered phone calls was a question of fact for the jury). Given the number of phone calls made after October 2, 2012, the statute of limitations has not expired on the § 1692d claims.

---

[4] Portfolio argues that Marcos Lopez lacks standing under §§ 1692c(1), (2), and (3) because he is not a consumer, but rather a third party. However, the FDCPA defines consumer as "any natural person obligated or *allegedly* obligated to pay any debt." 15 U.S.C. § 1692a(3). In another case involving communications erroneously sent to the wrong debtor, the Eighth Circuit held that a "mistaken allegation is an allegation nonetheless" and found the plaintiff to be a consumer as defined by the FDCPA. *Dunham v. Portfolio Recovery Assoc., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011). In *Browne v. Portfolio Recovery Assoc., Inc.*, the district court concurred in dicta that a non-debtor could still be considered a consumer under the FDCPA. 2013 WL 871966 at *4 (S.D. Tex. Mar. 7, 2013). Because Portfolio alleged that Marcos Lopez owed them money, regardless of who was the intended recipient of those allegations, he has standing to sue under §1692c.

Sections 1692b(2) and (3); 1692c(a)(1), (2) and (3); 1692c(b); and 1692e all require the debt collector to have either communicated with the consumer or a third party or have made an affirmative representation. The FDCPA defines "communication" as the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. § 1692a(2). An unanswered phone call where the caller declined to leave a message cannot be considered a communication because no information was conveyed. Similarly, merely causing the phone to ring is not an affirmative representation. A voicemail message, however, would is a communication under the FDCPA definition. *Thompson v. Diversified Adjustment Serv., Inc.*, 2013 WL 3973976 at *4-6 (S.D. Tex. July 31, 2013). Marcos Lopez's amended complaint indicates that Portfolio left messages on numbers associated with him on four times after October 2, 2012. Analyzing the amended complaint purely on a statute of limitations basis, the amended complaint would not be futile for the additional FDCPA claims because Marcos Lopez has alleged voicemail communications occurring after October 2, 2012.

As pleaded, however, the amended complaint could not withstand a 12(b)(6) motion to dismiss on his §§ 1692b(2), 1692c(a)(1), 1692e, and 1692f claims. If the proposed amended complaint could not survive a 12(b)(6) motion, then the motion to amend the complaint would be futile. *Landavazo v. Toro Co.*, 301 Fed. Appx. 333, 337 (5th Cir. 2008). Marcos Lopez has merely alleged that Portfolio left four voicemail messages for Plaintiff without describing the content of the messages.[5] Section 1692b(2) prevents a debt collector from stating to a third party that a consumer owes any debt, while §1692e bars any false or misleading representations.[6]

---

[5] Marcos Lopez does set forth in detail the content of several voicemails and conversations occurring *before* October 2, 2012, but any claim based on these communications is barred by the statute of limitations.

[6] None of the other FDCPA claims center on the content of the communications, but rather bar communications made in a certain manner. For example, § 1692b(3) prevents communications with third parties generally other than obtaining location information or to correct erroneous information, while § 1692c(3) prevents debt collectors from contacting the consumer at the consumer's place of employment if the debt collector knows or has reason to know

Without providing any specifics Portfolio's communications, Marcos Lopez has not set out even in general terms how Portfolio violated §§ 1692b(2) and 1692e. Conclusory allegations that Portfolio violated various FDCPA provisions supported only by the *existence* of four voicemail messages do not set forth a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Although § 1692c(a)(1) is not content specific, it prohibits communications made "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." Marcos Lopez has failed to allege how the communications were made at an unusual time or place or in an inconvenient manner and accordingly has not stated a claim for relief under § 1692c(a)(1). Nor has he demonstrated how simply calling and leaving voicemails could be considered "unfair or unconscionable" under §1692f without alleging the messages' content. Marcos Lopez's motion to amend his complaint to assert claims under §§ 1692b(2), 1692c(a)(1), 1692e, and 1692f of the FDCPA is denied as currently set forth in the proposed amended complaint. Marcos Lopez's motion to amend is granted with regards to the §§ 1692b(3), 1692c(a)(2) and (3), 1692c(b), and 1692d claims.

Although the proposed complaint fails to set forth claims for relief under the above FDCPA sections, the deficiencies in the proposed amended complaint are not fatal. Marcos Lopez's counsel has represented to the Court that she is now in possession of some thirty recordings of calls made after October 2, 2012. These recordings may be of communications as defined by the FDCPA. Marcos Lopez has until March 31, 2015 to amend his complaint to cure the deficiencies on such claims. Any claim that fails to satisfy the pleading requirements will be dismissed with prejudice.

---

the employer prohibits such communications. Simply by alleging that Portfolio made a communication in a prohibited manner, the proposed complaint has stated a claim for which relief can be granted under §§ 1692b(3), 1692c(a)(2) and (3), 1692c(b), and 1692d.

*Plaintiff has satisfied the pleading requirements for damages*

Portfolio argues that Marcos Lopez's TDCA claims are futile because he cannot show actual damages. Unlike the federal FDCPA, the TDCA is generally not a strict liability statute and requires a showing of actual damages in order to receive a monetary award other than attorney's fees.[7] Tex. Fin. Code § 392.403(a). Portfolio contends that Marcos Lopez could not have suffered actual damages from calls he did not answer and in fact alleges he was not aware of until October of 2014. Portfolio's argument is flawed for two reasons. First, Portfolio's argument relies on the same underlying premise as its statute of limitations argument: that Marcos Lopez cannot sue under the TDCA based on the conversations he had with Portfolio because the limitations period has expired. As noted above, this argument is incorrect. Any conversations Plaintiff had with Portfolio employees after October 2, 2011 are potentially actionable under the TDCA.

Second, at this stage in the litigation Marcos Lopez is only attempting to amend his complaint. The Court need only review the amended complaint to determine whether it can withstand a 12(b)(6) motion to dismiss. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). A 12(b)(6) motion exists to test the formal sufficiency of the statement for relief; it is not a procedure to resolve a contest about the facts or merits of a case. *Johnson v. Coldwell Real Estate Corp.*, 2006 WL 2403539 at *1 (N.D. Miss. Aug. 18, 2006). "General damage, or such as is the common or ordinary consequence of the act complained of, need not be specially alleged in the declaration. . . ." *Wade v. Leroy*, 61 U.S. 34, 39 (1857); *see also Am. Realty Trust, Inc. v. Matisse Capital Partners, LLC*, 2001 WL 1343765 at *2 ("[G]eneral

---

[7] The TDCA does provide for statutory damages for certain violations which are not alleged here. It also allows plaintiffs to sue for injunctive relief without proving actual damages. Even if Marcos Lopez cannot demonstrate actual damages, he could still maintain an action for injunctive relief under the TDCA.

damages [are] subject to no particularized pleading requirement.") (N.D. Tex. Oct. 26, 2001). Marcos Lopez has alleged that Portfolio violated the TDCA and the violations thereby caused him injury. This prayer for relief is sufficient to satisfy federal pleading requirements. Portfolio may well be correct that Marcos Lopez faces an uphill battle to prove actual damages, but he need not surmount that obstacle at this time.

## Conclusion

The Court will issue an order consistent with this memorandum opinion.

SIGNED **March 12, 2015.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE