

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
11/24/2015

| | | |
|---|---|---|
| IN RE: | § | |
| MARCOS F. LOPEZ; aka LOPEZ; dba LOPEZ | § | CASE NO: 09-70659 |
| NURSERY & LANDSCAPING; aka OLGA'S | § | |
| BASKETS & FLOWERS; aka LOPEZ, *et al* | § | CHAPTER  13 |
| Debtors | § | |
| | § | JUDGE RODRIGUEZ |
| | § | |
| MARCOS F. LOPEZ | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-07019 |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | |
| LLC. | § | |
| Defendant | § | |

**MEMORANDUM OPINION
GRANTING, IN PART, AND DENYING, IN PART
PLAINTIFF'S MOTION FOR SANCTIONS**

*[Resolving ECF No. 54]*

Marcos Lopez ("***Plaintiff***"), who filed for chapter 13 bankruptcy protection in 2009,

filed an adversary complaint against Defendant, Portfolio Recovery Associates, LLC ("***PRA***"),

alleging that it made debt collection calls to Plaintiff in violation of the automatic stay and the

chapter 13 confirmed plan for satisfying creditors. Plaintiff later amended his complaint to

clarify his first set of claims regarding the confirmed plan and automatic stay violations, also

adding a new set of claims alleging violations of the Fair Debt Collection Practices Act, the

Texas Debt Collection Act, and the common law tort of unreasonable debt collection. Notably,

Plaintiff's new claims rely on the same alleged conduct giving rise to the original set of claims,

and the new and original claims are similarly affected by PRA's defense of mistake. Neither

party has motioned for a withdrawal of the reference to the United States District Court for the

Southern District of Texas. However, Plaintiff has motioned this Court to sanction PRA for its alleged bad faith practices during the discovery process in this proceeding arising from PRA's alleged post-petition collection practices.

Specifically, Plaintiff asks this Court to sanction PRA by: (1) deeming the facts of the case in a way that would defeat PRA's defense of mistake against Plaintiff's underlying claims in this case, or in the alternative, (2) to preclude PRA from presenting any evidence that was subject to PRA's discovery abuses, namely those portions of evidence related to PRA's argument of mistake, or in the alternative, (3) to enter default judgment in favor of Plaintiff, leaving only the issue of damages for trial and in any case, (4) to allow Plaintiff to recover reasonable attorney's fees and costs, incurred in connection with the Motion for Sanctions, from PRA, and (5) for all such other and further relief to which Plaintiff may be entitled in law or in equity.

After considering the arguments of the parties, the evidence and testimony presented by the witnesses at the evidentiary hearing on the Motion for Sanctions, and the applicable law, this Court holds that Plaintiff's Motion for Sanctions is **GRANTED**, in part, and **DENIED**, in part.

## I. Findings of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

The facts are, in pertinent part, as follows:

1.      On September 14, 2009, Plaintiff, and his spouse, Maria Olga Lopez, filed their initial petition under chapter 13 of title 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***").[1] [Case No. 09-70659; ECF No. 1].

---

[1] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

2.      On October 02, 2013, Plaintiff initiated an adversary proceeding against PRA, [Case No. 13-07019; ECF No. 1], which eventually gave rise to the instant Motion for Sanctions. [ECF No. 54].

3.      In this adversary proceeding, Plaintiff initially alleged that PRA's repeated phone calls to Plaintiff's home and employer associated phone numbers violated the automatic stay and violated the established chapter 13 plan for satisfying creditors. [ECF No. 1]. PRA claims that it made a mistake in identity, because rather than seeking to collect on the pre-petition debts of Marc**os** Lopez, PRA initiated these phone conversations to collect on the debts of an unrelated third party, Marc**o** Lopez. [ECF No. 25].

4.      Unsatisfied with PRA's discovery conduct, Plaintiff filed a Motion to Compel on April 8, 2014 ("***Motion to Compel***"). [ECF No. 21]. In the Motion to Compel, Plaintiff requested that PRA be compelled to produce documents relating to Plaintiff's Requests for Production Numbers 3-9 and 12. Numbers 3 and 4 requested: (3) "documents and records" of any telephone calls placed to Plaintiff's "2103" and "6200" phone numbers and (4) "each document recording, documenting, or otherwise tracking" PRA's attempts to collect any debt from Plaintiff . Plaintiff specifically argued that the records produced were too highly redacted. *Id.* Plaintiff's Request Number 5 sought documents relating to any debt or account for which PRA contacted Plaintiff, and Plaintiff argued that the records produced were so heavily redacted that Plaintiff could not confirm that such account records did not actually belong to Plaintiff . *Id.* Plaintiff also argued that PRA failed to produce the results of a skip-tracing report, which the produced documents indicated was performed in 2011. *Id.*

5.      Plaintiff's Motion to Compel also alleged that PRA outright refused to produce any responsive documents to Request Numbers 6-9, which requested information relating to

PRA's policies and procedures regarding debt collection. *Id.* Finally, Plaintiff argued that PRA's response to Request For Production Number 12, a glossary of all codes, abbreviations, and other non-obvious terms, was deficient. *Id.*

      6.      On April 22, 2014, Brandon Jackson ("***Jackson***"), a properly noticed employee of PRA, "no-showed" for his scheduled deposition. [ECF No. 54]. Plaintiff's oral deposition of Jackson was scheduled for April 22, 2014 in Dallas, TX and noticed to PRA on April 04, 2014. [Def. Ex. 1]. Plaintiff filed a Certificate of Nonappearance when the deponent failed to appear. [Pl. Ex. 35]. PRA contends that Jackson's "no-show" was the result of confusion between the parties and their belief that Plaintiff planned to reschedule. [ECF No. 65]. PRA points to the fact that Plaintiff had simultaneously noticed a Dallas, TX deposition of PRA's corporate representative for the same scheduled day as Jackson's deposition. *Id.*; *see also* [Def. Ex. 1] (Plaintiff's Notice of Intent to depose Jackson sent April 04, 2014); [Def. Ex. 2] (Plaintiff's Notice of Intent to depose PRA's corporate representative sent April 04, 2014). PRA also claims that it notified Plaintiff that Jackson lived in Alabama, PRA was based in Virginia, and that Plaintiff acknowledged that the depositions could not properly be taken at their offices in Dallas. *Id.* PRA's counsel sent an email to Plaintiff's counsel on April 14, 2014 (as a follow up to an April 11, 2014 conversation), alerting Plaintiff to the Deponents' geographical restrictions and asserting that "[PRA] cannot confirm dates…until you advise us of whether or not you intend to take these deposition[s] in the locale(s) referenced above." [Ex. D-3]. PRA and Plaintiff purportedly rescheduled the deposition of PRA's corporate representative for April 29, 2014 by agreement. [ECF No. 65]. PRA claims that it had further discussions with Plaintiff regarding the deposition of Jackson near his residency in Alabama, but that no such scheduling took place. *Id.* PRA also claims to have been unaware of Plaintiff's intention to take the deposition of Jackson

as originally scheduled for April 22, 2014 in Dallas, TX. *Id.* Plaintiff claims that the confusion over Jackson's deposition was PRA's fault, because PRA failed to provide alternative dates at Plaintiff's request. [ECF No. 30]. After Jackson's no-show on April 22, 2014, this Court issued an Order on Plaintiff's Motion to Compel on April 30, 2014 and held a hearing on a subsequent second Motion to Compel on May 20, 2014. Neither the Order on the first Motion to Compel nor the Hearing on the second Motion to Compel involved the issue of Jackson's "no-showing." [ECF No. 23] (order only relating to documents); [ECF No. 46 at 21-22] ("I'm going to allow the Plaintiffs, if they wish, to retake the deposition of a corporate representative after [PRA finishes its ordered production of documents]").

7.     Plaintiff conducted the rescheduled first deposition of PRA's corporate representative on April 29, 2014 in Norfolk, Virginia. [Ex. P-18]. PRA put forth Timothy Rees ("***Rees***") as its corporate representative for the deposition. *Id.* Plaintiff addressed in a subsequent May 20, 2014 hearing that Rees could not adequately testify to properly noticed matters, specifically in that he could not testify as to PRA's policies in place prior to his joining PRA in April of 2012. *See* [ECF No. 46].

8.     On April 30, 2014, this Court issued an Order Granting, In Part, and Denying, In Part, Plaintiff's Motion to Compel. [ECF No. 23]. The Court Ordered that Requests 3, 4, and 5, documents relating to PRA's contact with Plaintiff, be produced in unredacted form. *Id.* The Court also Ordered that Requests 6-9, calling for documents relating to the previous five years of PRA's policies and procedures, be produced. *Id.* This Court denied Plaintiff's Motion to Compel with respect to Request 12, relating to the allegedly deficient PRA glossary. *Id.*

9.     Following this Court's April 30, 2014 Order partially granting Plaintiff's April 8, 2014 Motion to Compel, Plaintiff remained unsatisfied with PRA's discovery compliance.

Plaintiff filed a Second Motion to Compel and for Contempt Sanctions ("*First Motion for Sanctions*"), [ECF No. 30], and a Supplement thereto, [ECF No 31], on May 16 and 18, 2014. In his First Motion for Sanctions, Plaintiff claimed that PRA was still not fully compliant as of the time of the motion's filing and requested sanctions in the form of entry of judgment in Plaintiff's favor. [ECF No. 30]. On May 19, 2014, PRA produced less than five years of the requested policy and procedure documents, and the unredacted copies of account records produced by PRA were obscured with large "confidential and proprietary" stamps that hampered the readability of the documents. [ECF No. 54].

10.    On May 20, 2014, this Court conducted a hearing on the First Motion for Sanctions and the Supplement thereto. [ECF No. 46]. During the hearing, this Court agreed that its April 30, 2014 Order had not been fully complied with and ordered full compliance by June 3, 2014. *Id.* at 21. This Court specifically found that PRA's theretofore recently produced paper documents were too obscured by a "confidential and proprietary" watermark, making many of those documents impossible to read and rendering the production noncompliant with the April 30, 2014 Order compelling production of Plaintiff's Request Numbers 3-5 (documents relating to PRA's contact with Plaintiff) and Numbers 6-9 (PRA's policy and procedure documents going back five years). *Id.* at 22. This Court also found that PRA failed to produce the full five years of policy and procedure documents as per Plaintiff's Production Numbers 6-9. *Id.* at 17. This Court ordered full and unredacted compliance with Numbers 6-9 and Numbers 3-5. *Id.* at 22. Plaintiff also complained that PRA's corporate representative, Rees, was unable to testify at the April 30, 2014 deposition that he had familiarity with the policies and procedures of PRA prior to April 2012, rendering his testimony inadequate. *Id.* at 9. This Court allowed Plaintiff to retake the deposition of a corporate representative of PRA and ordered PRA to pay the costs of

the new deposition.  *Id.* at 21-22.  This Court also ordered fee shifting of the costs of the Motion to Compel at the May 20, 2014 hearing.  *Id.* at 22.  However, this Court declined to impose Plaintiff's requested higher sanctions of entering judgment in Plaintiff's favor, striking PRA's pleadings, establishing facts in Plaintiff's favor, or precluding evidence in PRA's disfavor.  *See* [ECF No. 30].

11.     On June 03, 2014, PRA produced approximately 2,531 pages of documents, pursuant to this Court's May 20, 2014 Order to produce unredacted documents without the "confidential and proprietary" watermark.  [ECF No. 54, ¶ 22].  Allegedly, PRA failed to reproduce some of the documents subject to that Order without the watermark, specifically the discovery Bates-stamped PRA Doc. Nos. 40-76, 81, and 224-236.  *Id.*  However, Plaintiff has demonstrated no evidence of such failure at this Court's August 04, 2015 hearing on the instant Motion for Sanctions beyond that which has been alleged in the pleadings.

12.     On June 13, 2014, PRA produced to Plaintiff "PRA Doc. No. 238," a document referred to as a "skiptrace report."  *Id.* at ¶ 23.  The skiptrace report was a document assigned to the name "Marc**o** Lopez" and included filled information for various fields, such as an address, email, company, and phone number.  [Pl. Ex. 63].  Allegedly, at the time in which PRA Doc. No. 238 was produced, PRA had redacted the entire Social Security number field.  [ECF No. 54, ¶ 23].  At this Court's August 04, 2015 Evidentiary Hearing, [ECF No. 134], Plaintiff neither offered nor had admitted PRA Doc. No. 238 with the entire Social Security number redacted. On October 07, 2014, PRA corresponded by email with Plaintiff , offering that "PRA Doc. No. 238 page is attached with all but the last four digits of the social security number redacted," apparently in response to Plaintiff's request eight days earlier for an unredacted form of the

document.  [Pl. Ex. 62].  PRA's attached version of the skiptrace report partially redacted the person's social security number, revealing only the last four digits.

13.     Plaintiff served his First Set of Interrogatories and First Request for Production of Documents ("***First Discovery Request***") to PRA on December 3, 2013.  [Pl. Ex. 2].  In Plaintiff's First Discovery Request, "document" had been defined, in part, as: "every writing or recorded material, of any kind, includ[ing], but… not limited to… voice recordings."  *Id* at 6.  Under the subject "Request for Production of Documents," paragraph 1, in the First Discovery Request, Plaintiff requested "[a]ny and all documents identified in response to or consulted for the response to any Interrogatory."  *Id.* at 7.  "Interrogatories," paragraph 3, asked PRA to "[i]dentify and describe each communication, or attempted communication, between the Defendant with the Plaintiff, which was made in connection with the collection of *any* debt."  *Id.* (emphasis added).  "Request for Production of Documents," paragraph 3, requested "[d]ocuments and records of any telephone call placed by Defendant to the phone numbers [ending in]… 2103… and 6200."  Id. at 8.  In its first document production, PRA allegedly produced seven phone recordings.[2]  [ECF No. 54, ¶ 10].

14.     On June 16, 2014, Plaintiff conducted two depositions pursuant to this Court's May 20, 2014 hearing Order allowing Plaintiff to retake the deposition of a corporate representative.  [ECF No. 46]; *see also* [Pl. Exs. 33 and 34].  For the scheduled retake, PRA presented two persons as corporate representatives, Rees, [Pl. Ex. 33], and Ms. Maceon Church ("***Church***").  [Pl Ex. 34].  Church was a Vice President at PRA Receivables Management, a subsidiary of PRA that handled accounts in bankruptcy, but PRA presented Church for the

---

[2] Allegedly, the phone recordings produced at this time were for phone calls placed on: July 9, 2012; September 7, 2012; September 26, 2012; November 7, 2012; November 19, 2012; December 13, 2012; and December 26, 2012. In opening argument on the hearing to the instant motion, PRA's Counsel pointed out that it had produced seven phone calls without being asked.

purpose of its own corporate representative deposition. [Def. Ex. 29].  Rees again expressed unfamiliarity with any training manuals and policies PRA had in place prior to his joining in April of 2012.  [Pl. Ex. 33 at 30-31].  Also, Rees knew of PRA's then current debt dispute policy, but he did not know of the policy in 2009.  *Id.* at 82.  Rees also did not know of PRA's policy regarding what proof PRA accepts to deny a customer's debt dispute.  *Id.* at p. 123. Church testified that she might have but could not say for certain whether she reviewed any of PRA's Bankruptcy Training Manuals in their entirety, but that her day-to-day function as an Assistant Vice President did not normally involve reviewing a manual.  [Pl. Ex. 34 at 9-12].

15.     At the June 16, 2014 deposition of Rees, Plaintiff asked whether PRA had a recording of a phone call placed on September 14, 2011 to Plaintiff's 6200 work phone number. [Def. Ex. 28 at 119-20].  Rees testified that he did believe PRA had a recording of the phone call, revealing for the first time that it was in PRA's possession.  *Id.*  When asked why that recording had not yet been produced, PRA responded that "[i]t hasn't been asked for."  *Id.*  When pressed as to why it would not produce a recording of an October 14, 2011 phone call to Plaintiff, PRA contended that Plaintiff never requested recordings in discovery, PRA's previous production of recordings was submitted despite Plaintiff never requesting them, and discovery had closed at that time.  *Id.* at 125, line 5-14.  The September 14, 2011 call was produced on October 7, 2014 in an email in which PRA's counsel wrote, "[a]ttached are all recordings which my client has been able to locate."  [Pl. Ex. 62].  Then, the October 14, 2011 call was produced on October 9, 2014 in an email in which PRA's counsel wrote, "[a]fter diligent efforts, PRA is as certain as they can be that these are all of the recordings that they have."  [Pl. Ex. 82].  Plaintiff has occasionally referred to the two phone recordings as the "smoking gun calls."  [ECF No. 137]. In the September 14, 2011 call, PRA's collection agent calls Plaintiff regarding a Capital One

Visa account, who denies owing the debt and tells the PRA agent, "well, I'm in bankruptcy right now." [Pl. Ex. 64]. In the October 14, 2011 call, Plaintiff again disputes ever owning a Capital One account and informs PRA that it is not supposed to call him at work. [Pl. Ex. 83].

16.     On October 11, 2014, Plaintiff filed a Motion to Amend and an Amended Motion to Amend his original Complaint, in light of new information that the ongoing discovery had revealed up to that point. [ECF Nos. 72-73]. This Court granted Plaintiff's Motion to Amend on March 12, 2015. [ECF No. 93]. Plaintiff filed an Amended Complaint ("***Amended Complaint***") on March 31, 2015, reconfiguring his original claims and adding claims for PRA's alleged violations of the Fair Debt Collection Practices Act ("***FDCPA***"), the Texas Debt Collection Act ("***TDCA***"), and the common law tort of unreasonable debt collection. [ECF No. 97-1]. Plaintiff now alleges that PRA communicated with Plaintiff or related persons over 900 times in an attempt to recover on a pre-petition debt during the course of Plaintiff's bankruptcy protection. [ECF No. 73 at 2].

17.     On September 12, 2014, Plaintiff filed the instant Motion for Sanctions with this Court, representing the second time in which he has asked to have PRA sanctioned in this proceeding. [ECF No. 54]. Specifically, Plaintiff asks this Court to:

1.   Enter judgment on behalf of Plaintiff against PRA on the merits of Plaintiff's stay violation claim and conduct trial solely on the issue of damages;
2.   Order PRA to reimburse Plaintiff for reasonable attorneys' fees and costs in preparing this motion for sanctions;
3.   Preclude PRA from providing evidence or testimony in the following ways:
     a.   Deny PRA the opportunity to provide evidence or testimony contradicting the information in the corporate policies and procedures it has produced, because PRA's corporate representatives were not competent to testify about those corporate policies and procedures at deposition;
     b.   Deny PRA the opportunity to offer any fact witness at trial regarding its communications with Plaintiff, because PRA failed to produce a fact witness at a deposition duly noticed to PRA; and
     c.   Deny PRA the opportunity to offer testimony or evidence that would contradict Plaintiff's testimony regarding any telephonic communication it

had regarding the collections efforts directed towards Plaintiff's work number for which a recording has not been produced.

4. Alternatively as to evidence preclusion, deem the facts related to the evidence subject to PRA's discovery abuse as such:

    a. Plaintiff informed PRA of the fact that he had filed bankruptcy on September 14, 2011;

    b. Plaintiff informed PRA that the debt PRA was attempting to collect from Plaintiff was not Plaintiff's debt on September 14, 2011;

    c. PRA's policies and procedures as contained in the documents produced are the actual policies and procedures PRA had in place during the relevant time period;

    d. PRA had no additional policies and procedures in place during the relevant time period; and

    e. The Social Security number that had been redacted by PRA in the June 13, 2014 produced skip-trace report is indeed Plaintiff's social security number. *Id.*

5. Issue all such other and further relief to which Plaintiff may be entitled in law or in equity;

18. This Court conducted an evidentiary hearing on Plaintiff's Motion for Sanctions on August 04, 2015. [ECF No. 137].[3]

## II. Conclusions of Law

### A. Statutory Authority

Bankruptcy courts have jurisdiction over "all proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. "Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11, while "arising in" jurisdiction is not based on a right expressly created by title 11, but rather based on claims that would have no existence outside of bankruptcy. *See Wood v. Wood*, 825 F.2d 90 (5th Cir. 1987).

---

[3] The instant Motion for Sanctions does not represent the first time in which PRA has been accused of repeated and willful abuses in discovery. During the evidentiary hearing on the instant motion, Plaintiff introduced a state court opinion in which PRA was severely sanctioned by the state court. *See Portfolio Recovery Associates LLC v. Mejia*, Case No. 1216–CV34184 (16th Cir.Ct.Mo.2014). *Mejia* involved a case in which PRA wrongfully sued an individual for a debt she did not owe, and the individual initiated a counterclaim for wrongful prosecution. *Id.* The court found that PRA had acted in bad faith, abused the discovery process, and repeatedly violated court orders even where given numerous opportunities to comply. *Id.* The state court sanctioned PRA by entering judgment in favor of the Plaintiff. *Id.* This Court admitted the state court opinion and its attendant filings from the state court docket into evidence, finding that the opinion could be factually instructive in showing whether the misconduct was attributable to PRA, whether PRA's misconduct was part of a plan or strategy, and what level of sanctions would be necessary to deter PRA from misconduct in the instant case. *In re Lopez*, 2015 WL 5438850, at *3 (Bankr. S.D. Tex. Sep. 14, 2015).

Claims "related to" cases under title 11 do not inhere rights created by title 11 or existing solely because of a bankruptcy case. Rather, "related to" claims vest jurisdiction to a bankruptcy court if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 6 (1995); *Wood*, 825 F.2d at 93.

Bankruptcy judges are empowered by statute "to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11... and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).  However, before a bankruptcy judge may hear any case, the governing district court must "refer" the case to the bankruptcy court.  28 U.S.C. § 157 (a)-(b)(1).  "Arising under," "arising in," and "related to" bankruptcy cases are automatically referred to this Court.  *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012).  Under its § 157 authority, a bankruptcy court may enter final orders and judgments on "core" proceedings, but bankruptcy courts must submit to the district court (for *de novo* review) "proposed findings of fact and conclusions of law" on non-core proceedings "related to" a case under title 11.  28 U.S.C. § 157(c)(1).  Section 157 enumerates a non-exhaustive list of proceeding types considered "core."  28 U.S.C. § 157 (2)(A)-(P).  Furthermore, the Supreme Court has further clarified the definition of "core" as all proceedings that "arise in" a bankruptcy case or "arise under" title 11.  *Stern v. Marshall,* 131 S. Ct. 2594, 2605 (2011).

With the consent of all parties, however, a district court may authorize bankruptcy courts to enter orders and judgments in non-core, "related to" proceedings.  28 U.S.C. § 157 (c)(2).

### B. Constitutional Authority

This Court also has an independent duty to evaluate whether it has the constitutional

authority to sign a final order.  *Stern*, 131 S. Ct. at 2594.  In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts.  *Id.*  The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters.  *Id.* at 2616.  The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate.  *Id.* at 2618.  The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19.  Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power.  *Id.* at 2620.  This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy.  *See* 28 U.S.C. § 157.  However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.  *Wellness International Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).  The parties in this matter, however, have expressly not consented to this Court entering final orders regarding non-core claims. The framework laid by *Stern* and *Sharif* require this Court to examine the statutory and constitutional dimensions governing each particular claim in the instant proceeding.

### C. This Court's Authority to Preside Over This Matter

Plaintiff pleads five claims against PRA, all of which stem from PRA's alleged conduct in attempting to collect from Plaintiff on account of a debt. While relying on the same factual allegations for all claims, Plaintiff's Amended Complaint presents a mixture of core and non-core claims.

Plaintiff's claims in his First Complaint that PRA, in calling to collect on a debt while he was in bankruptcy, violated 11 U.S.C. § 362's automatic stay and his bankruptcy case's chapter 13 plan confirmation order.  [ECF No. 1].  These are undoubtedly claims that "arise under" title 11, since they stem from the protections offered to debtors by provisions in the Bankruptcy Code.  *See In re Lopez,* 2015 WL 1207012, at *3 (Bankr. S.D. Tex. March 12, 2015).  As such, these are core claims for the purposes of § 157's statutory and *Stern's* constitutional limitations, and this Court has full authority to enter binding judgments and orders with respect to the merits of these original claims.

Plaintiff's added claims from his Amended Complaint assert violations of the FDCPA, the TDCA, and the common law tort of unreasonable debt collection.  [ECF No. 97-1].  These three additional claims do not "arise under" title 11, creating no independent rights rooted in bankruptcy law and requiring no interpretation of the Bankruptcy Code for their disposal.  Moreover, these claims do not "arise in" bankruptcy, because they have an existence outside of a bankruptcy proceeding. Based on PRA's alleged actions, Plaintiff could have sued PRA under any of these federal or state laws without relying on outcomes occurring in a bankruptcy case. However, these three additional claims could potentially augment the estate of Plaintiff as a Debtor, and thus they "relate to" a bankruptcy proceeding.  *In re Lopez,* 2015 WL 1207012, at *3.  Because the FDCPA, TDCA, and common law tort claims are merely related to a

bankruptcy case, this Court finds them to be non-core for statutory and constitutional purposes. The claims and the defenses in this case share many of the same essential factual allegations and evidentiary support. Plaintiff's claims all rely on proving that PRA called him to collect on a debt. PRA adheres to a mistaken identity defense in that it was calling Marc**o**, not Marc**os**.

This Court's authority to issue sanctions for discovery conduct with respect to the underlying claims is different than this Court's authority to issue final judgments on the merits of those underlying claims. This is because the integrity of the discovery process helps to fully apprise a bankruptcy court as to the threshold of whether a merited and jurisdictionally proper claim stands before it, and it therefore must have some power to enforce this process irrespective of whether the underlying claim is core or non-core. *See In re Allison*, 2006 WL 2620480, at *7 (Bankr. S.D. Tex. Sep. 12, 2006) ("At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction"); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("discovery itself is designed to help define and clarify the issues."); *see also United States v. Strickland*, 1990 WL 33712, at *1 (6th Cir. Mar. 27, 1990) ("[c]ivil contempt sanctions are coercive in nature and designed to compel obedience to court orders and compensate for injuries caused by noncompliance"). There may be limits to the extent to which this Court may sanction a party where the underlying claim is a non-core issue in which a bankruptcy court may not enter a final ruling on the merits. *See* Robin Russell, *A Survey of Sanctions in Bankruptcy Courts: The Fifth Circuit and Beyond*, 55 S. Tex. L. Rev. 583, 599-600 (2014). For example, a sanction striking a pleading or deeming a substantial number of facts related to a non-core claim could become so dispositive on the claim as to constitute a default judgment, thereby effectively entering a final judgment on the merits of a non-core claim, possibly in violation of *Stern*. *See Marshall v. Segona*, 621 F.2d 763, 766 n. 3 (5th Cir. 1980) (discussing that evidence preclusion

or fact deeming can be tantamount to dismissal in some instances).  This Court is mindful of the possible limits to its authority to impose the severest of sanctions where such sanctions bear on the merits of the non-core portions of the proceeding. Having established that some claims in this proceeding may constitutionally be ruled upon with finality on the merits while others may not, this Court is left to consider whether sanctions may be imposed with respect to all claims.

This Court concludes that in sanctioning PRA with respect to evidence, it does not categorically issue a final ruling on that claim in violation of *Stern*. Nor does this Court in its following analysis effectively sanction with such weight as to the evidence such that its sanction constitutes a final default judgment ruling on the merits, in violation of *Stern*. Accordingly, this Court, in its full authority to sanction, will ascertain the justness of sanctions in the instant Motion.

### D. This Court's Statutory Authority to Impose Sanctions

"A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject-matter jurisdiction over a case."  *Lynch v. Union Pac. R.R. Co*., 24 F.Supp.3d 597, 599 (N.D. Tex. 2014) (citing *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999)).  Therefore, this Court must determine whether the procedural posture of the instant matter gives rise to basic jurisdiction. Plaintiff has motioned to sanction PRA for discovery conduct in a proceeding involving provisions of the Bankruptcy Code and non-bankruptcy "related to" claims. This Court held, at the relevant times of misconduct, and continues to hold subject matter jurisdiction over all claims in this proceeding, and thus it clearly holds the power to issue appropriate sanctions for a party's abuse of procedure regarding those claims.

This Court's substantive power to sanction rests in its inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

[title 11]… [and] tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). In more specificity, this Court's power to issue sanctions for discovery abuse is found in, but not limited by, Rule 37 of the Federal Rule of Civil Procedure, from which the bankruptcy rules derive. Fed. R. Bankr. P. 7037.

Rule 37(b) applies "[i]f a party fails to obey an order to provide or permit discovery,... the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). In addition to a court's duty to require the disobedient party to pay the reasonable expenses caused by the failure to comply with a discovery order, Rule 37(b) empowers a court to implement a non-exhaustive list of available sanctions. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In relevant part based on Plaintiff's Motion for Sanctions, these sanctions include (A)(i) in "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and (A)(ii) in "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Rule 37(c) regards a party's continuing duty to supplement or correct their disclosures and responses in a timely manner pursuant to Fed R. Civ. P. 26(e). Under Rule 37(c), a party's failure to comply with Rule 26(e)'s duty to supplement permits a court to order the failing party to pay reasonable expenses. Rule 37(c) also empowers the court to deny the use of the abused evidence, impose all available sanctions from Rule 37(b)(2)(A)'s enumerated list, or craft its own appropriate sanction.

Under Rule 37(d), where a party fails to attend its properly noticed deposition, a court is required to order the failing party to pay reasonable expenses and is empowered to issue all sanctions available under Rule 37(b)(2)'s enumerated list or otherwise found appropriate.

Having outlined the framework of substantive sanctions powers available to resolve the instant Motion, this Court turns to the guiding principles governing the use of sanctions powers and to whether PRA's behavior deserves sanctions.

### E. The Legal Standard for Sanctions

Plaintiff requests that this Court issue sanctions in the form of fact deeming, pursuant to Rule 37(b)(2)(A)(i), or by prohibiting PRA from introducing evidence, pursuant to Rule 37(b)(2)(A)(ii).

A court must consider the suitability of the particular sanctions as applied to the party's specific conduct. A court imposes discovery sanctions to (1) secure compliance with the rules of discovery, (2) deter others from violating them, and (3) punish those who violate them. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 456 U.S. 639, 643 (1976). The Supreme Court established two standards, a general and specific standard, in the context of imposing Rule 37(b)(2) sanctions for discovery abuse. First, the sanction must be "just." Second, the imposed sanction must be specifically related to the particular claim that was at issue in the order providing discovery. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1993). Furthermore, the Fifth Circuit added a third Rule 37 consideration in requiring "that the sanction meet the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior[.]" *Chilcutt v. United States*, 4 F.3d 1313, 1319-20 (5th Cir. 1993). A court has broad discretion to fashion Rule 37 remedies for the misconduct of a party. *Smith & Fuller, P.A. v.*

*Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).  However, to impose the harshest of sanctions, such as the striking of pleadings or dismissal of the case, a finding of bad faith or willful misconduct is usually required.  *Id.*

 *Insurance Corp. of Ireland* is instructive on how to apply these principles in fashioning an appropriate set of sanctions. In *Insurance Corp. of Ireland*, the plaintiff sued a group of excess insurers for their refusal to indemnify a business loss in the plaintiff's Pennsylvania operations.  456 U.S. at 698.  The insurer defendants challenged the lawsuit by claiming a lack of personal jurisdiction.  *Id.*  In discovery, the plaintiff sought several copies of insurance policies issued over four relevant years, to which the defendants objected on the grounds of burdensomeness.  *Id.*  The plaintiff thereafter limited its discovery request to policies delivered in Pennsylvania or covering a risk located therein, to which the defendants then objected that the documents were not in their custody or control, but rather kept by London brokers.  *Id.*  The district court ordered the defendants to request those policy documents from their brokers, after which the defendants offered to make their four million files worth of records available for inspection in London.  *Id.* at 698-99.  The district court ordered the defendants to produce the documents by a new 60 day extension and warned that it otherwise would rule in favor of plaintiff on the motion.  *Id* at 699.  The defendants having failed to produce the requested information to plaintiff within the ordered timeframe, the district court deemed that personal jurisdiction was proper as to the defendants.  *Insurance Corp. of Ireland*, 456 U.S. at 699.  Under an abuse of discretion standard, the Supreme Court affirmed the sanction as "just," pointing to the district court's findings that defendants had repeated warnings that they would be sanctioned for either not producing the documents or showing other evidence that there was no personal jurisdiction, repeatedly promised to and failed to comply, and were found to have made no effort

to comply.  *Id.* at 707-08.  The Supreme Court also found it important that the plaintiff's claim that the defendants had personal jurisdiction was not frivolous, because requesting discovery to substantiate a frivolous claim is an abuse of judicial process.  *Id.* at 708.

The Supreme Court also concluded that the sanction was related to the claim giving rise to discovery, because the plaintiff sought to substantiate a personal jurisdiction claim through discovery, and the defendants' misconduct in blocking discovery prevented establishing the minimum contacts necessary to prove the claim.  *Id.* at 709.

Reading the combined guiding principles of the Supreme Court and the Fifth Circuit, this Court will consider the goals of punishment, compliance, future third party deterrence, and proportionality when considering whether a sanction is "just" under *Insurance Corp. of Ireland's* first standard. This Court must also honor the second *Insurance Corp. of Ireland* standard requiring a specific relationship to the claim that was at issue in the discovery misconduct.

### III. Analysis

This Court shall consider whether fact deeming or evidence preclusion sanctions are appropriate and whether to award reasonable fees and costs.

This Court will first dispose of the second standard for Rule 37 sanctions established by the Supreme Court in *Insurance Corp. of Ireland*, in that the sanctions be specifically related to the claim giving rise to discovery.  456 U.S. at 707.  In essence, Plaintiff's claims rely upon showing the phone numbers in which PRA has contacted Plaintiff, the number of times PRA contacted Plaintiff, the conversations that PRA had with Plaintiff, and documents evidencing what PRA likely knew when it called phone numbers actually associated with Plaintiff. Similarly, PRA relies on a defense of mistake in an attempt to defeat Plaintiff's claims, and Plaintiff would be prevented from fully evaluating such a defense where PRA withholds

information. Where PRA puts up incompetent or missing witnesses, Plaintiff is denied the ability to elicit reasonable information that would lead to more effective discovery on the issues and question witnesses on personal knowledge with respect to PRA's knowledge or state of mind. Since PRA's alleged abusive behavior is material to the claims in this proceeding, sanctions that would affect the strength of those claims and defenses thereto would be "specifically related" to the claims at issue in the order to provide discovery.  *Insurance Corp. of Ireland*, 456 U.S. at 707.

This Court turns to whether the particular sanctions requested individually satisfy the standard from *Insurance Corp. of Ireland* that it be "just" and the further requirements from the Fifth Circuit.  In so analyzing, this Court will be mindful of the goals of punishment, compliance, future third party deterrence, and proportionality.

Because Plaintiff's Motion for Sanctions prayed for relief on September 12, 2014, [ECF No. 54], this Court may only consider PRA's conduct until that time. Nevertheless, PRA's conduct subsequent to the Motion for Sanctions may inform this Court as to its willfulness, absence of mistake, and the least necessary sanction to secure compliance.

*Denying Evidence and Witnesses*

Plaintiff asks this Court to sanction PRA in the following ways:

A. Deny PRA the opportunity to provide evidence or testimony contradicting the information in the corporate policies and procedures it has produced, because PRA's corporate representatives were not competent to testify about those corporate policies and procedures at deposition.

A court's power to sanction a party for putting up incompetent witnesses rests in the principles underlying Rule 30(b)(6), which governs the deposition of witnesses.  *See Hoffman v. L & M Arts*, 2015 WL 1000864, at *6 (N.D. Tex. Mar. 6, 2015).  The Fifth Circuit has illustrated the special nature of deposing a corporate representative as a witness. In *Brazos River Authority*

*v. GE Ionics, Inc.*, the Fifth Circuit noted that it is not possible to literally depose a corporation itself, but such a deposition must instead be obtained from a natural person who can speak for the corporation.  469 F.3d 416, 433 (5th Cir. 2006).  The Fifth Circuit then noted that a corporate representative must present the corporation's position on the noticed topic, rather than his personal opinions.  *Id.*  In concluding that the purpose of Rule 30(b)(6) in this context was to avoid the possibility of the corporation putting up officer after officer, each of whom might abuse the process by disclaiming knowledge, the Fifth Circuit embraced the rule that a corporation:

> must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought [in the deposition notice] and to *prepare* those persons in order that they can answer fully, completely, [and] unevasively… [and] [t]he duty to present and prepare a… designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.

*Id.* (internal quotations and citation omitted).  "If [the] agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993).  Given that producing an unprepared witness is tantamount to a failure to appear, the corollary is that a party in so doing may run afoul of Rule 37(d), which provisions for flexible sanctions if a party's designated representative fails to appear for deposition.  *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996).

The question remaining for this Court is the level of sanctions appropriate for PRA's alleged behavior with respect to its noticed witnesses. In *Resolution Trust*, the Fifth Circuit affirmed a district court's award of fees and costs pursuant to Rule 37, where the offending party

had withheld documents that would have indicated a knowledgeable witness, instead put up two incompetent witnesses for an expensive and "useless deposition," and only thereafter indicated the witness who would be competent to testify. 985 F.2d at 197-98. In *Hoffman*, the court there entitled the party moving for sanctions to recover fees and costs in connection with conducting a corporate deposition, where the witness was unable to testify competently regarding the various noticed technology topics and refused to answer many questions within the scope of the deposition topics. 2015 WL 1000864, at *5.

Whereas many courts have awarded fees and costs for an unproductive deposition, this Court is faced with a scenario in which it did not formally order the production of competent witnesses, but in which it authorized Plaintiff to retake a deposition of a PRA corporate representative prospectively at PRA's cost. PRA has accordingly already borne the costs of that second deposition, at which it purportedly again presented incompetent witnesses. This Court concludes that it will not sanction PRA for its presentation of purportedly incompetent corporate witnesses in the second deposition of PRA's corporate representative.

Plaintiff's desire in seeking five years of policies and procedures is presumptively an attempt to prove that PRA had no reasonable policies in place to prevent violations of bankruptcy and consumer laws during the relevant times in which Plaintiff has been under bankruptcy protection. PRA did comply on June 03, 2014 with this Court's order to furnish five years of paper policy and procedures in full, thereby allowing Plaintiff ample time to assess PRA's written policies. These written policies were fully available to Plaintiff at the time of the rescheduled, June 16, 2014 deposition. However, there remains an issue, possibly inuring to the merits of Plaintiff's claims, as to whether PRA had any unwritten procedures and policies that added to or conflicted with the written policies.

This Court concludes that it is immaterial whether PRA's corporate representatives were incompetent to testify as to PRA's written policies, where Plaintiff has had full access to the documentary policies and procedures as per court order. Of course, PRA will not be punished with respect to the first deposition of Rees, insofar as PRA has already been punished for that conduct through this Court's May 20, 2014 authorization to retake the deposition and order for fee shifting. With respect to the second, June 16, 2014 deposition, this Court is unconvinced that the witness' respective manifestations of incompetence substantially extended beyond a lack of knowledge regarding PRA's compendium of manuals dating back five years. By Plaintiff's own evidence, Church only exhibited a lack of knowledge with respect to manuals presented to her. [Pl. Ex. 34].   However, Plaintiff has not shown that he has made any attempt to separately question Church on any of her knowledge outside of the *written* policies, such that Plaintiff might be prejudiced by surprise unwritten policies at trial. Plaintiff spent a mere 28 minutes questioning Church from 5:34 PM to 6:02 PM.   [Def. Ex. 29].   Indeed, Church answered Plaintiff's question, "would you agree [that the bankruptcy training manual] reflects the bankruptcy department's policies and procedures" with her response "[i]t should reflect a portion of it or some of it," [Def. Ex. 29 at 10], which indicates that Church had an independent base of knowledge regarding bankruptcy procedures. Moreover, Church testified at deposition to the fact that training manuals for bankruptcy hadn't existed prior to her arrival, but rather took place on a peer training, non-memorialized basis.  [Def. Ex. 29 at 13].  This Court concludes that Church was not incompetent in a way as to prejudice Plaintiff. Plaintiff's claim as to Rees's incompetence does not fare much better. At best, Plaintiff has shown that Rees does not know anything about the policies that PRA had in place, on paper or otherwise, prior to his joining the company in April of 2012. This is not a fatal lack of competence. In light of Church's

acceptability as a deposed witness with respect to unwritten policy, this Court finds that PRA should not be sanctioned through a preclusion of evidence or testimony as to unwritten policies; such an imposition would not be proportional. Rather, this Court finds that any gaps in knowledge within this context would be best addressed through the process of cross examination on the merits before the trier of fact in this proceeding. This request is hereby **DENIED**.

    B. Deny PRA the opportunity to offer any fact witness at trial regarding its communications with Plaintiff, because PRA failed to produce a fact witness at a deposition duly noticed to PRA.

PRA deserves sanctions, in accordance with Plaintiff's request, for its failure to present a properly noticed fact witness. In his Interrogatory No. 4 dated March 4, 2014, Plaintiff had requested that PRA "[i]dentify the employees, representatives or agents of [PRA] who have communicated, or attempted to communicate with [Plaintiff]," and PRA listed several of its agents who had been in contact with Plaintiff, one of whom was Jackson.  [Def. Ex. 13 at 2]. Thereafter, on April 4, 2014, Plaintiff properly noticed Jackson for a deposition scheduled on April 22, 2014.  [Def. Ex. 1].  This Court concludes that Jackson's testimony represented an opportunity to evaluate PRA's account of what happened in its conversations with Plaintiff, and thus Jackson's unexcused absence has prejudiced Plaintiff's ability to gather evidence that goes to the heart of the merits in this case. This Court moreover concludes that PRA's conduct was highly reckless in disregard to a lawful deposition notice, if not willful. The fact that this Court, in its May 20, 2014 hearing, did not earlier cover the issue of Jackson's failure to appear is of little avail to PRA's defense, because the Jackson issue was not before this Court at that time, thus leaving this Court to currently consider the sanctionability of such malfeasance. This Court is also unconvinced by PRA's account of the confusion due to an apparent scheduling conflict between the deposition of Jackson and that of PRA's corporate representative. That conflict was reasonably resolved when the parties rescheduled the corporate representative's first deposition,

thereby freeing Jackson's deposition. If PRA remained confused as to whether Plaintiff intended to continue with Jackson's deposition as originally scheduled, it should have filed a motion for protective order or motion to quash.

This request is hereby **GRANTED** and PRA is **PRECLUDED** from presenting a fact witness to testify regarding personal knowledge of any of PRA's communications with Plaintiff in which the fact witness was personally involved.

This Court's decision to sanction PRA by preventing it from hereafter offering any testimony as to its communications with Plaintiff is further reinforced by PRA's flagrant abuse with respect to phone recordings that it had withheld.

C. Deny PRA the opportunity to offer testimony or evidence that would contradict Plaintiff's testimony regarding any telephonic communication it had regarding the collections efforts directed towards Plaintiff's work number for which a recording has not been produced.

This Court shall impose sanctions on PRA in the form of preventing it from hereafter offering testimony or evidence contradicting Plaintiff's account of the telephonic communication directed towards Plaintiff. This Court must clarify how this sanction is to operate. Since Plaintiff has not shown that PRA has failed to produce documentary paper records with respect to telephone calls made to Plaintiff, PRA is not prohibited from producing paper evidence or testimony thereto for the purpose of showing when and how Plaintiff was contacted by PRA. However, for PRA's flagrant and willful abuse in withholding the September 14, 2011 and October 14, 2011 "smoking gun" phone calls, wherein Plaintiff informed PRA of the fact that Plaintiff was in bankruptcy and the debt was not his, this Court shall prohibit PRA from producing any evidence or testimony regarding PRA's telephonic conversations or communications with Plaintiff towards Plaintiff's 6200 work number and in contradiction to Plaintiff's testimony, where such evidence or testimony is related to a phone recording that had

not been produced prior to the submission of the instant Motion for Sanctions on September 12, 2014. PRA revealed for the first time that it possessed a September 14, 2011 phone call during Rees's second deposition on June 16, 2014, which PRA's Counsel refused to release on the clamorous and unreasonable grounds that recordings had never been requested. [Def. Ex. 28 at 119].  PRA had not produced the smoking gun calls by the time in which Plaintiff filed the instant motion, and indeed it was not until thereafter in October of 2014 when PRA finally acquiesced to release the recordings. This Court cannot conclude that PRA's disregard of Plaintiff's lawful discovery request, which reasonably reads to include "recordings," was anything but willful. PRA's abuse prejudiced Plaintiff's ability to build his case, and PRA may not enjoy the advantage that it has self-provisioned. It is of no avail to PRA's defense that this Court had not previously addressed any issues regarding telephone conversation recordings, because such recordings fell under the continuing duty to supplement Plaintiff's original discovery request. Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure… or who has responded to an interrogatory, request for production, or request for admission… must supplement or correct its disclosure or response").  PRA was on notice that any recorded phone calls fell within the scope of Plaintiff's original discovery request, under the discovery request's definition of "document" as: "every writing or recorded material of every type and description." PRA plays ignorant as to its duties to produce phone recordings by claiming that "recordings" was "buried" within Plaintiff's discovery definition of documents.  [ECF No. 65 at 6]. Yet, PRA's argument is dubious. PRA evinced an understanding that phone recordings fell within the scope of discovery when it produced seven phone recordings early in discovery without opposition, only to disinter that understanding for the purpose of demonstrating a supposed good faith bewilderment. PRA's account of the situation is not convincing, and thus this Court finds

that PRA beached the duty of continuing disclosure. Moreover, PRA is not availed of its argument that Plaintiff has not proven prejudice, because there is now currently no pending trial and "Plaintiff points to no discovery… that has not conducted as a result of the alleged discovery abuses." [ECF No. 150].  Such an objection to sanctions fatally ignores the underlying purpose in the sanction powers, in that courts must be empowered to impose order on cases in order to prevent abuses in the litigation process. To take a categorical "no eventual harm, no ultimate foul" approach would allow parties to utterly emasculate a bankruptcy court's inherent sanctioning power and the orderly administration of a case, by encouraging parties to willfully abuse the discovery process, wait for the opposing party to file a motion for sanctions, and then deny the presiding court the sanctions power by "fixing the prejudice" at the last minute. The more appropriate inquiry is to measure the prejudice from the perspective of the time in which the request for sanctions was plead.  *See Astrazeneca AB v. Mutual Pharmaceutical Co. Inc.*, 278 F.Supp. 2d 491, 493 (E.D. Pa. 2003) (imposing sanctions for a party's failure to disclose vital evidence during discovery, where party disclosed such evidence for the first time after the close of discovery); *see also American Stock Exchange, LLC v. Mopez, Inc.*, 215 F.R.D. 87, 95-96 (S.D.N.Y. 2002).  Here, Plaintiff has suffered prejudice at the time of the pleadings, because it had not received the "smoking gun" phone calls until well after Plaintiff filed the instant Motion for Sanctions. In the interest of justice, Plaintiff's request is hereby **GRANTED** insofar as PRA is **PRECLUDED** from offering any testimony or evidence that would contradict the testimony of Plaintiff regarding any telephonic communications PRA had regarding its collections efforts directed towards Plaintiff's "6200" work number, if it involves a phone recording that had not been produced prior to the submission of the instant Motion for Sanctions on September 12, 2014.

*Fact Deeming*

Plaintiff asks this Court to sanction PRA by deeming the following facts:

    A.  Plaintiff informed PRA of the fact that he had filed bankruptcy on September 14, 2011.

        Plaintiff requests that this Court deem Plaintiff to have informed PRA of the fact that he was in bankruptcy on September 14, 2011. PRA offers no objection to so deem this fact, and this Court concludes that the goals of sanctions will be forwarded here for many of the same reasons previously discussed. The fact that Plaintiff would inform PRA that he was in bankruptcy is relevant to the merits of Plaintiff's claims. For instance, this fact may show that PRA had notice or intentionally called Plaintiff. Plaintiff requested "recordings" from the beginning of this adversary proceeding, which initiated on October 02, 2013. PRA finally produced the September 14, 2011 call a year later on October 07, 2014. This happened after rancorous stonewalling, where PRA acknowledged the existence of a September 14, 2011 phone call for the first time in Rees's June 16, 2014 deposition, and yet refused to produce the call until October of 2014. This Court concludes that Plaintiff has suffered prejudice in being stonewalled with respect to phone recordings for a year, where Plaintiff clearly informed the operator on the September 14, 2011 phone call of the fact that he was in bankruptcy. PRA's refusal to fairly allow Plaintiff to establish and evaluate his claims by abiding by the lawful terms of discovery is behavior for which PRA should be punished. Discovery having closed, compliance is not an imperative goal at this point, but this Court concludes that the interest of deterring future abuses by PRA and third parties will be forwarded by this sanction. PRA originally redacted its call logs related to the 6200 work number in such a way as to redact the entry of a September 14, 2011 phone call in which there was an actual conversation, and only thereafter produced a differently redacted call log document that revealed the existence of such a phone conversation occurring. *Compare* [Pl.

Ex. 3 at "PRA Doc. No. 17"] *with* [Pl. Ex. 29 at "PRA Doc. 247"].  Such an obfuscation with respect to a document evidencing a phone conversation, for which Plaintiff would have the incentive to request further discovery and for which it has been revealed that PRA possessed a material phone recording favorable to Plaintiff's case, assuredly portends PRA's conduct in hiding the existence of a material phone recording. Moreover, in light of PRA's flagrant abuse, this Court concludes that this will be the least necessary sanction, well-proportioned to the misconduct. This Court also notes that PRA offers no contest on this sanction. This request is hereby **GRANTED** and it is hereby **DEEMED** that during a September 14, 2011 phone call, Plaintiff informed PRA of the fact that he had filed bankruptcy.

B.  Plaintiff informed PRA that the debt PRA was attempting to collect from Plaintiff was not Plaintiff's debt on September 14, 2011.

For substantially the same reasons involving the withholding of the September 14, 2011 and October 14, 2011 phone calls, this sanction would be just. Had PRA produced Jackson for deposition, there might have been an opportunity to offer a reasonable dispute as to this fact. This is not to deem the veracity of Plaintiff's factual claim in the conversation or PRA's state of mind; this Court merely finds that Plaintiff had so informed PRA under his own honest belief. This request is hereby **GRANTED** and it is hereby **DEEMED** that during a September 14, 2011 phone call, Plaintiff informed PRA that the debt PRA was attempting to collect from Plaintiff was not Plaintiff's debt.

C.  PRA's policies and procedures as contained in the documents produced are the actual policies and procedures that PRA had in place during the relevant time period.

Plaintiff has failed to meet his burden of showing why this Court should embrace this fact as requested. On May 20, 2014, this Court ordered PRA to produce the full five years of policy documents, and it has not been demonstrated that there has been a material failure thereof. In fact, Plaintiff admits in his instant pleadings that five years of policy and procedure documents,

albeit with a negligible amount of pages still marked with the PRA stamps,[4] were produced on June 3, 2014, the deadline that this Court imposed on PRA to fully comply.  [ECF No. 54 at 7]. Plaintiff has suffered no prejudice that has not been addressed in this Court's May 20, 2014 Order compelling discovery and shifting fees, after which PRA fully complied with respect to the policy and procedure documents. This request if hereby **DENIED**.

    D.  PRA had no additional policies and procedures in place during the relevant time period.

       Plaintiff urges this Court to embrace the fact that PRA had no additional policies and procedures, written or unwritten, besides those produced with respect to the five year time period requested in discovery. This Court cannot conclude that this request would be just.  Plaintiff believes that Rees and Church, the two deponents that PRA offered as its corporate representatives, were incompetent to testify as to properly noticed issues. Specifically, Plaintiff contends that Rees could not testify about policy documents that were in place prior to April of 2012, could not testify about the differences between specific versions of manuals, and admitted that he had not entirely read or otherwise lacked complete understanding of certain manuals. [ECF No. 54 at 11-12].  Plaintiff argues that this Court ordered PRA to produce a competent witness for a rescheduled deposition, and yet PRA once again put up Rees. Moreover, Plaintiff asserts that PRA's second corporate representative at the rescheduled deposition, Church, could not even confidently state that she had read the entirety of PRA's bankruptcy training manuals, nor could Rees.  *Id.* at 12.

       Plaintiff's line of argument misstates the facts and misunderstands the law. This Court did not order PRA to produce a competent witness, but merely allowed Plaintiff the opportunity to retake the deposition at PRA's cost, which hardly constitutes an order to produce a competent

---

[4] Of 2,531 pages produced after the May 20, 2014 hearing, pages 40-76, 81, and 224-236 allegedly were produced with the "confidential and proprietary" stamp still in overlay. Purportedly, PRA unintentionally redacted those documents and furnished them in unredacted form at the second corporate deposition.  [ECF No. 150 at 6].

witness. [ECF No. 46 at 21]. Moreover, Plaintiff's argument appears to conflate the concepts of policies on paper versus policies in practice. While Plaintiff argues that the corporate representatives were incompetent to testify as to PRA's full five year of policy documents, no claim was made that the representatives were incompetent to testify as to any unwritten policies or procedures in place. Plaintiff is at full liberty to point out any knowledge gaps or contradictory statements on cross-examination at trial, and this Court refuses to impose an overbroad sanction where PRA has timely produced the full requested document set by this Court's deadline and Plaintiff has not claimed how any of PRA's alleged abuse is related to unwritten policies. This request is hereby **DENIED**.

  E.  The Social Security number that had been redacted by PRA in the June 13, 2014 produced skip-trace report, as shown in Exhibit "F" to the instant Motion for Sanctions, is indeed Plaintiff's Social Security number.

  PRA does not contest Plaintiff's request to deem the redacted Social Security number as his. [ECF No. 150]. Given the facts and party consensus on deeming this fact, this Court shall conclude that such fact deeming would be just. Moreover, it is clear by the pleadings and evidence that PRA has not acted in entirely good faith with respect to the skiptrace report's production. This Court compelled discovery of fully unredacted documents in a hearing on May 20, 2014. PRA thereafter produced a fully redacted skiptrace report, which redacted away all of the digits in the Social Security number field, to Plaintiff in June of 2014. It was not until October of 2014 when PRA finally produced a partially redacted version of the skiptrace report showing the last four digits, which would allow Plaintiff to fully ascertain whether PRA conducted a skiptracing procedure with intention to contact Plaintiff instead of a third party with a similar name. PRA prejudiced Plaintiff's ability to fully assess PRA's conduct, and PRA should thusly be punished. PRA could very well have motioned for a protective order if it was concerned that revealing the last four digits of a Social Security number would raise third party

privacy issues, but it instead chose to confound the discovery process. This request is hereby **GRANTED**, and it is **DEEMED** that the Social Security number that had been redacted by Defendant in the June 13, 2014 skiptrace report, as shown in Exhibit "F" to the instant Motion for Sanctions is Plaintiff's Social Security number.

*Reasonable Attorney's Fees and Costs*

Plaintiff requests that the Court "Order Defendant to reimburse Plaintiff's reasonable attorneys' fees in preparing the foregoing motion." [ECF No. 54 at 21]. Regarding the failure of a party to attend its own deposition, Rule 37(d) requires a court to shift reasonable expenses and attorney's fees to the party failing to attend, unless the failure was substantially justified. Rule 37(d)(2) describes the "ground that the discovery sought was objectionable" as an unacceptable excuse for failing to act, unless the failing party has a pending motion for a protective order. Defendant has sought neither a protective order nor a motion to quash with respect to Jackson's scheduled deposition. With respect to a party's failure to disclose or supplement in discovery, Rule 37(c) permits a court to order payment of the reasonable expenses caused by a party's failure to comply, unless such failure is substantially justified or harmless. This Court has concluded that no-showing Jackson as a fact witness and withholding important phone conversations within the scope of discovery was sanctionable conduct, and this Court also concludes that there is no valid justification for such conduct. Moreover, it is evident that Plaintiff's necessity in filing the instant Motion for Sanctions was caused by Defendant's sanctionable conduct. Plaintiff has prevailed in part on his motion, proving valid contentions against Defendant, and this Court therefore directs PRA to pay the reasonable attorney's fees and costs in preparing Plaintiff's instant Motion for Sanctions.

*Default Judgment*

This Court's foregoing analysis represents its discretion and judgment with respect to the level of sanctions that are appropriate. Where a court awards default judgment as a discovery sanction, two criteria must be met. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). First, the penalized party's discovery violation must be willful. *Id.* Second, the drastic measure of default judgment must only be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.* Additionally, the court may consider whether the discovery violation prejudiced the opposing party's preparation for trial. *Id.*

Here, this court has only concluded that PRA's only relevant willful conduct was the withholding of telephone recordings. The contents of the "smoking gun" phone calls, while material to Plaintiff's claims, are doubtfully sufficient evidence to show a reasonable trier of fact that Plaintiff meets his burden of proving that Defendant has committed violations on all of Plaintiff's claims. Plaintiff suffered prejudice related to phone calls in which Plaintiff made assertions to PRA, which could have led to more productive depositions and possibly spurned Plaintiff to request more helpful evidence within the now-closed discovery window. Plaintiff has not met his burden of showing that PRA's conduct doomed his whole case. As such, in considering the prejudice to Plaintiff, this Court concludes that default judgment would remedy a non-existent, overbroad prejudice than actually suffered by Plaintiff. Rather, this Court has already appropriately addressed Plaintiff's precise prejudice with respect to telephonic communications. Moreover, this Court concludes that no further sanctions are necessary to deter PRA's future misconduct or the misconduct of third parties. This Court therefore declines to impose a default judgment.

## IV. Conclusion

Plaintiff's instant Motion for Sanctions is thus **GRANTED**, in part and **DENIED**, in part. Factual presumptions and evidence and witness preclusion will be conducted in accordance with this opinion. PRA is hereby ordered to pay all reasonable attorneys' fees and costs associated with the instant motion.

A separate Order consistent with this Opinion shall be issued simultaneously herewith.

SIGNED 11/24/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge