

ENTERED
09/28/2017

| | | |
|---|---|---|
| IN RE: | § | |
| MARCOS F. LOPEZ; aka LOPEZ; dba | § | CASE NO: 09-70659 |
| LOPEZ NURSERY & LANDSCAPING; aka | § | |
| OLGA'S BASKETS & FLOWERS; aka | § | |
| LOPEZ, *et al* | § | |
|     Debtor | § | |
| | § | CHAPTER 13 |
| | § | |
| MARCOS F. LOPEZ | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-7019 |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | |
| LLC. | § | |
|     Defendant | § | JUDGE EDUARDO V. RODRIGUEZ |

**MEMORANDUM OPINION
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION
FOR COMPENSATION
&
REIMBURSEMENT OF EXPENSES
<u>RELATING TO PLAINTIFF'S MOTION FOR SANCTIONS</u>
*Resolving ECF No.* 194**

## I.  <u>INTRODUCTION</u>

Pending before this Court is Plaintiff's Application for Compensation and Reimbursement of Expenses Relating to Plaintiff's Motion for Sanctions (Docket No. 54). ECF No. 194 (the "*Application*"). The Application stems from this Court's November 24, 2015 Memorandum Opinion and Order granting in part and denying in part Marcos F. Lopez's ("*Plaintiff*") Motion for Sanctions against Portfolio Recovery Associates, LLC ("*PRA*"). ECF Nos. 158, 159. This Court ordered, *inter alia*, that PRA "pay the reasonable attorney's fees and costs incurred [by Plaintiff's Counsel, Kellett & Bartholow PLLC ("*Applicant*")] in preparing"

the Motion for Sanctions.  ECF No. 159 at ¶ 4.  In regard to this Court's Order, Applicant ultimately seeks $176,967.50 in fees and $2,023.41 in reimbursable expenses for a total amount of $178,990.91. ECF No. 194; Pl.'s Ex. 1, 73.  PRA vehemently opposes an award of $178,990.91 in attorney's fees to Applicant and suggests that Applicant be awarded $15,498.80. ECF No. 195.  This Court considers the pleadings filed, the evidence presented, the United States Bankruptcy Code,[1] and all relevant case law to determine whether the Applicant is entitled to all of the fees and expenses requested in the Application.

## II. <u>FINDINGS OF FACT</u>

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is any inconsistency, this Memorandum Opinion controls.

Further, for the purposes of this Memorandum Opinion, and to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the Finding of Facts in the three prior Memorandum Opinions entered by this Court.  ECF No. 93 at 2–5 (the "*First Memorandum Opinion*"); *In re Lopez*, 2015 WL 1207012, at *1 (Bankr. S.D. Tex. Mar. 12, 2015); ECF No. 145 at 1–3 (the "*Second Memorandum Opinion*"); *In re Lopez*, 2015 WL 5438850, at *1 (Bankr. S.D. Tex. Sept. 14, 2015); ECF No. 158 at 2–11 (the "*Third Memorandum Opinion*"); *In re Lopez*, 2015 WL 7572097, at *1 (Bankr. S.D. Tex. Nov. 24,

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

2015).

On September 24, 2014, Plaintiff filed his Motion for Sanctions. ECF No. 54 ("*Sanctions Motion*").  On August 4, 2015, the Court took up the Sanctions Motion and ordered briefing on the *Mejia* exhibits[2] issue due to PRA's objection to the admissibility of the exhibits and ordered the parties to file proposed findings of fact and conclusions of law.  On November 24, 2015, the Court issued its Third Memorandum Opinion and accompanying order ("*Sanctions Order*") granting in part and denying in part Plaintiff's Sanctions Motion, which included the requested relief of deeming certain facts as established against PRA, precluding PRA from offering certain testimony, and awarding Plaintiff reasonable attorneys' fees and costs.  ECF Nos. 158, 159 (granting six of Plaintiff's requests for sanctions and denying four of Plaintiff's requests for sanctions).

On December 8, 2015, PRA filed its notice of appeal of the Third Memorandum Opinion and Sanctions Order and Motion for Leave to Appeal ("*Motion for Leave*").  ECF Nos. 162, 163. On January 6, 2016, Plaintiff filed his designation of the record on appeal.  ECF No. 169.  On January 13, 2016, Plaintiff prepared and filed an Agreed Motion to Abate.[3]  ECF No. 171.  On September 1, 2016, the United States District Court issued its order denying PRA's Motion for Leave on the basis that this Court's Sanctions Order was an interlocutory order and therefore was not subject to appeal. ECF No. 186.

On February 15, 2017, Plaintiff filed the Application and initially requested a total of $144,753.91 in fees and expenses for Applicant's work on the Motion for Sanctions.  ECF No. 194 at 21.   On March 8, 2017, PRA filed a response to Plaintiff's Application for Compensation

---

[2] ECF No.134; Pl.'s Exs. 133-144.

[3] Abating all outstanding deadlines regarding the Court's November 24, 2015 order.

and Reimbursement of Expenses Relating to Plaintiff's Motion for Sanctions.  ECF No. 195 ("*Response*").  In the Response, PRA asked the Court to reconsider the amount of attorney's fees it awarded Applicant and alleged, *inter alia*, the following:

(i)     that Applicant failed to demonstrate adequate billing judgement;

(ii)    that the billing records showed extreme inefficiencies in billing;

(iii)   that the rate attorneys sought was much higher than the prevailing market rate;

(iv)    that the block billing attorneys used impeded the Court's analysis; and

(v)     that Applicant could not recover fees for PRA's appeal to District Court nor should it recover for interoffice communications.

*Id.*  PRA's Response further stated that, using the *Johnson* factors, the Court should adjust the lodestar calculation "downward to reflect Plaintiff's excessive billing practices."  *Id.* at 30.  It supplied the Court with three recommendations for how the Court should calculate the new lodestar number.  *Id.* at 32–34.  Ultimately, PRA requests that Applicant be awarded $15,498.80 in attorney's fees and be denied all costs and the remaining fees.  *Id.* at 35.

On April 7, 2017, Plaintiff filed a reply to PRA's Response asking the Court to reject PRA's recommendations.  ECF No. 210 ("*Plaintiff's Reply*").  Plaintiff argued the following:

(i) that PRA's proposed reductions to Applicant's fees were "unreasonable, duplicative, legally unjustified, and mathematically impossible;"

(ii) that the Court should adopt Applicant's "well-established rates and reject PRA's faulty analysis and unpersuasive 'evidence;'"

(iii) that Applicant should be allowed to recover fees related to PRA's unsuccessful appeal;

(iv) that PRA waived its right to dispute the reasonableness of the hours in the Application;

(v) that PRA's recommended proposals for adjusting Applicant's fees are "useless." *Id.* at 25;

(vi) that using the *Johnson* factors, Applicant is entitled to a fee enhancement due to the extreme delay in reimbursement; and

(vii) that PRA's Response "is riddled with misrepresentations and half-truths."

Two weeks later, on April 14, 2017, PRA filed a sur-reply to Plaintiff's Reply and claimed that Plaintiff's new evidence lacked probative value and that PRA did not make any material misrepresentations nor misrepresent any case law.  ECF No. 219 ("*PRA's Sur-reply*"). PRA's Sur-reply asked that the Court "reject Plaintiff's unfounded and unnecessary arguments and accusations." *Id.* at 10.

On April 18, 2017, this Court held a hearing on the Application.  Applicant consisting of Mr. Theodore O. Bartholow, III ("*Bartholow*"), Ms. Karen L. Kellett ("*Kellett*"), and Ms. Caitlyn Wells ("*Wells*") appeared on Plaintiff's behalf, whereas PRA's Counsel, consisting of Ms. Robbie Malone ("*Malone*"), Mr. Bruce Akerly ("*Akerly*"), and Mr. Xerxes Martin ("*Martin*"), appeared as well. Due to time constraints, the hearing continued to April 28, 2017.  At the hearings, both Plaintiff and PRA offered evidence and arguments on the Fee Application. Plaintiff and PRA stipulated to the admittance of PRA's exhibits A, D, F, H, I, J, K, L, N, and P. Over Plaintiff's objection, PRA's exhibits B, C, E, and G were admitted for demonstrative purposes only.  PRA's exhibit O was not admitted.  PRA stipulated to all hours related to PRA's appeal of the Third Memorandum Opinion and Sanctions Order, as denoted in PRA's exhibit E, if this Court determines the legal issue of Applicant's entitlement to fees for defending against PRA's Motion for Leave in Applicant's favor.  Plaintiff and PRA stipulated to the admittance of Plaintiff's exhibits 2–9, 27, 38, 48, and 99.  Over PRA's objection, the Court admitted Plaintiff's

exhibits 1, 10, 13, 24, 26, 32, 35, 40–42, 47, 49–60, and 65–98.   The Court also took judicial notice of Plaintiff's exhibits 12, 14–23, 25, 28–31, 33–34, 36–37, 39, 43–46, and 61.

At the two hearings, extensive testimony was elicited from a series of individuals called by Plaintiff.  The Court summarizes that testimony as follows:

1. Ms. Ellen Stone ("*Stone*") testified regarding her experience as a consumer bankruptcy attorney in the Rio Grande Valley ("*RGV*").  Stone testified that she has approximately 30 years of experience as an attorney and 25 years of experience as a bankruptcy attorney in the RGV.  Stone testified that she has only filed adversary proceedings involving both bankruptcy and consumer causes of action as co-counsel in conjunction with Applicant.  Stone testified that she is unaware of any other attorneys in the RGV filing adversary proceedings raising both bankruptcy and consumer causes of action.  On *voir dire*, Stone testified that she would charge $500.00 per hour for the type of work Applicant did in the instant case, whereas her typical rate is $350.00 per hour.  Despite being offered by Plaintiff, Stone was not qualified as an expert on attorney's fees.  The Court found Stone's testimony to be credible.

2. Bartholow testified regarding his experience as a consumer bankruptcy litigator for over 10 years.  Bartholow testified that Applicant files adversary proceedings on behalf of consumer debtors in the RGV nearly as frequently as its home jurisdiction of Dallas.  He also testified, per his review of the docket in McAllen and Brownsville, that Applicant is currently the only firm in the RGV that files stay violation adversary proceedings, save approximately one to three per year filed by Mr. Chuck Newton.  Bartholow testified regarding how he calculated his

rates. Bartholow also testified regarding the process Applicant took to review the time records in this case and reduce the sought after fees based on redundant, unnecessary, and inefficient work.   Bartholow testified regarding Plaintiff's exhibits 74–98, which consisted of fee applications and fee awards in Applicant's prior cases in both the Southern and Northern Districts of Texas.   Bartholow testified about the work Applicant did regarding the Sanctions Motion.   Despite being offered as an expert by Plaintiff, Bartholow was not qualified as an expert on attorney's fees.  The Court found Bartholow's testimony to be credible.

3.  Wells testified that based on her review of the adversary docket in the RGV Applicant is the only firm trying cases that include non-bankruptcy consumer law claims.  Wells testified that Applicant's rates have been consistently approved in the Southern District of Texas.  Wells also testified regarding her work on the Application and preparation for the related hearing.  The Court found Wells's testimony to be credible.

4.   Kellett testified as an expert on attorney's fees over PRA's objection.  Kellett practices consumer financial litigation with a bankruptcy component.  Kellett has been practicing for thirty years and has been practicing consumer financial litigation since 1994.  Kellett testified that she has been setting her hourly rate since the year 2000.  Based on her experience litigating bankruptcy and consumer law cases in Dallas and the RGV, Kellett testified that her opinion is that the rates charged by Applicant are reasonable.  The Court found Kellett's testimony to be credible.

At the two hearings, extensive testimony was elicited from a series of individuals called by PRA.  The Court summarizes that testimony as follows:

1. Martin testified regarding his preparation of PRA's exhibits A–G.  Martin also testified regarding his review of Applicant's fee applications and various instances of "block-billing" in Applicant's time entries.  The Court found Martin's testimony to be credible.

2. Akerly testified regarding his experience in the RGV in both bankruptcy and creditor-specific issues.  Akerly was offered as an expert over Plaintiff's objection; however, he was not designated as an expert.  The Court found Akerly's testimony to be credible.

### III. <u>LEGAL STANDARD</u>

#### A. Attorney's Fees for Defending an Appeal

Provided that a party receives appropriate notice and hearing, courts may sanction a party "for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Chambers v. NASCO, INC.*, 501 U.S. 32, 57 (1991); *Conner v. Travis Cnty.*, 209 F.3d 794 (5th Cir. 2000) (noting that the Supreme Court "rejected a *per se* rule barring a court from sanctioning parties for conduct they take outside its courtroom" in *Chambers*).  The Fifth Circuit has held that "there is no valid basis" for awarding attorney's fees incurred in a "collateral state court proceeding" when awarding attorney's fees based on sanctionable conduct in a bankruptcy proceeding.  *In re Case*, 937 F.2d 1014, 1022 (5th Cir. 1991).  The inherent power to sanction "must arise from the litigation before that court."  *Id.*  Additionally, the Fifth Circuit ruled that a district court's award of sanctions on the basis of a frivolous appeal was improper because the appellate court is "better qualified to determine whether an appeal lacks merit."  *Conner*, 209

F.3d at 800–02.  In a ruling awarding attorney's fees, our sister court determined that 11 U.S.C. § 105 provides a mechanism for awarding attorney's fees for work on an appeal that is not in conflict with Fed. R. App. P. 38.[4]  *In re Rodriguez*, 517 B.R. 724, 738–39 (Bankr. S.D. Tex. 2014).  The court determined that it "may use § 105 to enforce its own orders, even if it does not find bad faith" and thereby award attorney's fees for parties who defend non-frivolous appeals. *Id.* at 739.

### B.  Attorney's Fees for Prosecuting a Fee Application

Pursuant to 11 U.S.C. § 330(a)(1)(A), an attorney may obtain "reasonable compensation for actual, necessary services rendered."  However, the United States Supreme Court recently ruled that "litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1)."  *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2167 (2015).  Specifically, the Supreme Court determined that "Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation."  *Id.* at 2164.  Accordingly, courts may not "shift the costs of adversarial litigation from one side to the other."  *Id.* at 2165.  Without "express statutory authorization," bankruptcy courts cannot award attorney's fees for defense of a fee application.  *Id.* at 2168.

### C.  Method for Calculating an Award of Attorney's Fees

A debtor's attorney "shall file with the court a statement of the compensation paid or agreed to be paid. . . for services rendered or to be rendered."  11 U.S.C. § 329(a).  It also provides, however, that if the "compensation exceeds the reasonable value of any such services, the court may cancel any such agreement."   § 329(b).  A person employed under § 329 may be

---

[4] "If a court of appeals determines than an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38.

awarded "a reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." § 330(a)(1)(A)-(B). Further, the Court may "award compensation that is less than the amount of compensation requested." § 330(a)(2); *see also In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (noting that bankruptcy courts have the discretion, both "upon motion or *sua sponte*," to award less attorney's fees than requested).

"The payment of attorney's fees may be broken into two separate sub-inquiries: (1) if the attorney has been properly employed and (2) if properly employed, if the fees are reasonable." *In re Palacios*, 2016 WL 361569 (Bankr. S.D. Tex. Jan. 27, 2017). In the case at bar, however, Applicant's proper employment is not disputed. Bankr. ECF No. 140.[5] The Court's inquiry should thus begin with the reasonableness of the fees.

### (i) The Lodestar Method

The Fifth Circuit uses the "lodestar method to calculate 'reasonable' attorney's fees under § 330." *In re Cahill*, 428 F.3d at 539 (citing *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994)); *see also In re Rodriguez*, 517 B.R. at 730. To compute the lodestar number, courts multiply "the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community." *In re Rodriguez.* at 731 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993)).

### *Calculating the Prevailing Hourly Rate*

"Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community." *In re Rodriguez*, 517 B.R. at 731 (citing *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)). The applicant must meet the burden to prove that the rates sought are in accordance with the prevailing community rates for similar services by

---

[5] "Bankr. ECF" refers to docket entries made in Debtors' bankruptcy Case, No. 09-70659.

reasonably comparable attorneys. *McClain*, 649 F.3d at 381. The Fifth Circuit determined that out-of-town counsel may be awarded out-of-town rates "under certain limited circumstances." *Id.* at 382. Courts must implement a two-prong test to determine whether out-of-town rates may be awarded: to wit, (1) "whether hiring out-of-town counsel was reasonable in the first instance," and (2) "whether the rates sought by the out-of-town counsel are reasonable for an attorney of his or her degree of skill, experience, or reputation." *In re Rodriguez*, 517 B.R. at 731 (*citing McClain*, 649 F.2d at 382). Even if a court finds that attorneys should be awarded out-of-town rates, however, reduced fees may still be necessary. *Id.*

*Reasonableness of Hours*

In addition to the appropriate rates, courts must also determine the reasonableness of the hours requested. *Shipes*, 987 F.2d at 319. "The burden is on the party seeking payment of attorney's fees to show that the hours requested are reasonable." *In re Rodriguez*, 517 B.R. at 734 (citing *In re Skyport Global Commc'ns, Inc.*, 450 B.R. 637, 647 (Bankr. S.D. Tex. 2011)). Counsel may meet this burden by providing "contemporaneous billing records or other sufficient documentation." *Id.* Even with such documentation, however, courts may find the hours expended to be unreasonable under a variety of circumstances: to wit, (1) hours spent on issues in which the attorneys did not prevail; (2) travel time; (3) lumped and vague entries; and (4) interoffice communications. *Id.* at 734–36. If the applicant does not demonstrate billing judgment, the court should reduce the fee award by a percentage to account for the lack of billing judgment and result in a reasonable number of hours. *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

A bankruptcy court's power to sanction "rests in its inherent equitable powers to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

[title 11] . . . [and] tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.'" ECF No. 158 at 16–17 (quoting 11 U.S.C. § 105(a)). Additionally, bankruptcy courts have the power to issue sanctions for discovery abuse based on Fed. R. Civ. P. 37, which is incorporated in Fed. R. Bankr. P. 7037. Pursuant to a court's inherent authority to sanction for bad-faith, however, the court's award of attorney's fees "is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017). Sanctions to reimburse legal fees "must be compensatory rather than punitive in nature." *Id.* at 1186 (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826–30 (1994)). Accordingly, the court must "establish a causal link" between the sanctionable conduct and the opposing party's attorney's fees through a "but-for test:" to wit, the complaining party may only recover the portion of fees that they would not have paid "but-for" the sanctionable conduct. *Id.* at 1186–87 (citing *Fox v. Vice*, 563 U.S. 826, 836 (2011)). Notably, however, the court "need not, and indeed should not, become green-eyeshade accountants" because "the essential goal [is] . . . to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

### (ii) *Johnson* Factors

To determine the reasonableness of attorney's fees, courts shall consider "the nature, the extent, and the value of such services." § 330(a)(3). Courts shall also take notice of relevant factors, including, but not limited to, the following:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the services was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task

addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in the cases other than cases under this title.

*Id.* Courts, however, may not allow compensation for the "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case. § 330(a)(4). "Section 330(a) also provides several other limitations on reasonable compensation in subsections (5) and (6)." *In re Palacios*, 2016 WL 361569 at *7.

The Fifth Circuit Court of Appeals elaborated upon the § 330(a) factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). In that case, the lower court awarded attorney's fees without "elucidating the factors which contributed to the decision and upon which it was based." *Id.* at 717. The Fifth Circuit thus created the following twelve guidelines when considering attorney's fees:

(1) the time and labor required. . . (2) the novelty and difficulty of the questions. . . (3) the skill requisite to perform the legal service properly. . . (4) the preclusion of other employment by the attorney due to acceptance of the case. . . (5) the customary fee. . . (6) whether the fee is fixed or contingent. . . (7) time limitations imposed by the client or the circumstances. . . (8) the amount involved and the results obtained. . . (9) the experience, reputation, and ability of the attorneys. . . (10) the "undesirability" of the case. . . (11) the nature and length of the professional relationship with the client. . . [and] (12) awards in similar cases.

*Id.* at 7.

After determining the lodestar number, courts then may enhance or reduce the lodestar number by considering the factors listed in § 330 and those iterated in *Johnson*. *Id.* "The lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar." *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994) (citing *Shipes*, 987 F.2d at 319-20). "The lodestar method is presumed to account for four of the twelve *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the

quality of representation, and the results obtained from litigation." *In re Rodriguez*, 517 B.R. at 730. The preclusion from other employment is also frequently subsumed in the lodestar method. *Shipes*, 987 F.2d at 321–22. Further, "while the bankruptcy court has considerable discretion in applying these factors . . . it must explain the weight given to each factor that it considers and how each factor affects its award." *In re Cahill*, 428 F.3d at 540 (internal citations omitted).

## IV. <u>CONCLUSIONS OF LAW</u>

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). The underlying adversary in this case involves both core and non-core claims. ECF No. 97-1; § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[6] The issue before the Court, however, is not a resolution of Plaintiff's claims; rather, the instant issue involves the amount of attorney's fees Applicant will receive based on this Court's prior ruling imposing sanctions against PRA for discovery violations. *See* ECF Nos. 158, 159 (ordering PRA to "pay all reasonable attorneys' fees and costs associated with" Plaintiff's Sanctions Motion"). This Court's power to issue sanctions for PRA's discovery violations derives from 11 U.S.C. § 105(a), Fed. R. Civ. P. 37, and Fed. R. Bankr. P. 37. *See* ECF No. 158 at 16–17. As this Court has jurisdiction to impose sanctions for discovery violations, this Court also has jurisdiction to

---

[6] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

determine the amount of attorney's fees awarded pursuant to this Court's prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (finding the "Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408.   In their petition, Plaintiff's home address is 8001 N. Ware Road, McAllen Texas. Bankr. ECF No. 1 at 1.[7] Therefore, venue is proper.

### B.  Constitutional Authority to Enter a Final Order

Although this Court has jurisdiction over the instant matter, this Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938– 39 (2015) (holding that parties may consent to jurisdiction on non-core matters).  First, the matter of the Application is not a claim based solely on state law, and therefore, is distinguishable from the facts of *Stern*. *Compare* ECF No. 194 *with Stern*, 564 U.S. at 462 (involving a state law counterclaim, which was unnecessary to validate the creditor's claim in the debtor's bankruptcy).  Additionally, *Stern* does not limit this Court's constitutional authority to enforce its prior order for PRA to pay reasonable attorneys' fees in connection with the Sanctions Motion. *See In re Ritchey*, 512 B.R. 847, 857 (Bankr. S.D. Tex. 2014) (determining that the court had constitutional authority to award sanctions to enforce a prior discharge order). Accordingly, this Court has the constitutional authority to issue a final order awarding fees based on the Application. *Id.*

### C.  Applicant is Entitled to Recover for Fees Incurred Defending PRA's Motion for Leave to Appeal

---

[7] "Bankr. ECF" refers to docket entries made in the Debtors' bankruptcy case, No. 09-70659.  The Court will cite to the record in Adversary Proceeding, No. 13-7019, unless otherwise noted.

The lodestar number in the case at bar presents a preliminary issue in that $17,522.00 of Applicant's requested fees were incurred in defense of PRA's Motion for Leave to the District Court.  Notably, at the April 18, 2017 hearing, PRA stipulated to the number of hours Applicant spent defending PRA's Motion for Leave, which total 42.16 hours.  Def.'s Ex. F.  However, PRA asserts that Applicant is not legally entitled to any fees related to defending against PRA's Motion for Leave.  Therefore, to properly calculate the lodestar number, the Court will first have to determine whether Applicant should recover for its work defending the Motion for Leave.

PRA asserts that Plaintiff is not entitled to recover attorney's fees for Applicant's work defending PRA's Motion for Leave because this Court is limited in its authority to sanction conduct that occurred before another court.  ECF No. 195 at 24.  Further, PRA notes that Plaintiff did not request sanctions from the District Court.  *Id.*  Conversely, Plaintiff argues that PRA conflates a litigated appeal with an unsuccessful motion for leave to appeal.  ECF No. 210 at 28.  Plaintiff contends that he is "requesting a complete remedy for PRA's violation of the rules of discovery and this Court's prior discovery orders," and not sanctions for a frivolous appeal.  *Id.* at 29.

The Court agrees with Plaintiff's assessment.  Plaintiff filed his Sanctions Motion because after numerous motions to compel PRA committed discovery violations and failed to turn over documents.  *See* ECF No. 54.  PRA's Motion for Leave to the District Court presented to Plaintiff yet another issue to defend in connection to PRA's misconduct.  In the matter at hand, Plaintiff had to defend himself against PRA's Motion for Leave or risk a potential reversal of this Court's favorable decision regarding the Sanctions Motion.  Further, this Court agrees with *Rodriguez* in that "many plaintiffs who were required to defend non-frivolous appeals would be left without a complete remedy when court orders are violated" if the fees to defend

against the Motion for Leave are denied.   517 B.R. at 739.   Awarding Applicant fees for defending the Motion for Leave on Plaintiff's behalf "is the only logical result." *Id.*

The Court must also note that the District Court dismissed the Motion for Leave as interlocutory, and thus, the parties never litigated the issue before a judge.   ECF No. 186.   This fact, however, does not change the Court's decision.   In consideration of a plaintiff's request for an award of attorney's fees, a court noted that a defendant's appeal was dismissed "because no final appealable judgment had been issued by the district court."   *Prospect Energy Corp. v. Dall. Gas Partners, LP*, 2011 WL 5864292, at *5 (S.D. Tex. Nov. 22, 2011).   Turning to whether the plaintiff was entitled to the fees incurred defending the appeal, the court concluded that the applicant had "not increased the dispute nor engaged in excessive litigation that was not forced on it by the opposition."   *Id.* at *7.   Similar to *Prospect Energy*, PRA essentially "forced" Plaintiff to file the Motion for Sanctions and to then defend the Motion for Leave.   This Court notes it is not awarding sanctions based on a "frivolous appeal."   Significantly, this Court ordered PRA to pay Plaintiff's "reasonable attorney's fees and costs incurred in preparing" the Sanctions Motion.   ECF No. 159 at 3.   Plaintiff incurred Applicant's fees in defense of the Motion for Leave in order to maintain this Court's order awarding sanctions against PRA.   *See* Def.'s Ex. F.   Thus, the fees fall within the purview of this Court's Sanctions Order.   *Compare id. with* ECF No. 159 at 3.   Therefore, the fees in question should not be deducted off the top simply because they were incurred in defense of an appeal as PRA suggests.   *See In re Rodriguez*, 517 B.R. at 739.   Rather, the Court finds that the fees related to the Motion for Leave are allowed based on this Court's ruling in the Sanctions Order.

### D.  Applicant is Not Entitled to Recover for Fees Incurred While Prosecuting the Application

In addition to the fees for defending the appeal, the Court must also consider whether

Plaintiff is entitled to reimbursement for the fees incurred by Applicant for defending the Application.  Although not requested in the Fee Application, Applicant submitted time entries at the hearings for the defense of its Application, totaling $34,237.00.  Pl.'s Ex. 73.  As attorneys employed by the debtor under § 329, Applicant is not entitled to these fees.   Under § 330(a)(1)(A), an attorney may obtain "reasonable compensation for actual, necessary services rendered."   The Supreme Court emphatically decreed that "litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1)."  *Baker Botts L.L.P.*, 135 S. Ct. at 2167.   All of the time and expense entries listed in Pl.'s Ex. 73 are related to the defense of the Application and therefore cannot be compensated as an "actual, necessary service rendered." *See id.*  The Court finds that Applicant cannot recover the $34,237.00 that Applicant incurred in defending its Application.  *See id.*

### E.  The Lodestar Number in this Case is $117,760.60

Having resolved two preliminary issues regarding whether certain fees Applicant seeks are legally compensable, this Court must now turn to the lodestar calculation.

### (i) Reasonableness of Rates

First, this Court must determine the reasonable hourly rate in this case.   The rates Applicant charges and seeks to recover under this Application are as follows:

   i.   Kellett - $500/hour

   ii.   Bartholow - $400/hour

   iii.   Wells - $250/hour and $300/hour[8]

   iv.   Bakhtawar Khan ("*Khan*") - $100/hour.

ECF No. 194 at 11.  Plaintiff initially contends that PRA has waived any argument regarding the

---

[8] Wells' hourly rate increased during the pendency of this case.

reasonableness of Applicant's rates. *Id.* at 13. Plaintiff notes that PRA has paid Applicant' attorneys' fees at the requested hourly rates twice in this case without objection, which "constitutes direct evidence of the reasonableness of Applicant's hourly rates" and PRA's waiver. ECF No. 210 at 24l; *see also* Pl.'s Exs. 11, 13. Responding to the waiver issue, PRA argues that there is no legal authority to support Plaintiff's argument. ECF No. 219 at 3. PRA further suggests that the Court's decision to "not deny" PRA's request that its payment of $3,300.00 to Applicant have no effect of waiver in connection with the Application. *Id.*; ECF No. 202 at n. 1.

Even if PRA did not waive any argument to the reasonableness of Applicant's rates, Plaintiff contends that Applicant's rates constitute the prevailing rates in the RGV or, in the very least, constitute appropriate out-of-town rates. Plaintiff notes that this Court, along with bankruptcy courts in the Northern District, have approved Applicant's hourly rates. ECF No. 210 at 21. Plaintiff argues that Applicant's rates are the prevailing rates for the RGV for adversary cases involving "hybrid consumer/bankruptcy litigation" because no local attorney has filed a consumer litigation adversary proceeding since 2014, apart from the Honorable Judge of this Court prior to taking the bench. *Id.* at 23. Plaintiff points to the affidavits of local bankruptcy attorneys, Mr. Enrique Solana ("*Solana*"), Ms. Jana Whitworth ("*Whitworth*"), and Mr. Abelardo Limon ("*Limon*"), to prove that none of the local bankruptcy attorneys are willing and able to take on a case of this nature. ECF No. 210 at 26; Pl.'s Exs. 4–6.

At the outset, the Court finds that PRA did not waive its objections to the reasonableness of Applicant's rates. PRA's arguments against Applicant's rates are essentially two-fold: namely, PRA avers that (1) Applicant's rates are not the prevailing rates for the RGV and (2) Applicant is not entitled to out-of-town rates. ECF No. 195 at 9–20. PRA contends that

Applicant should only be entitled to the prevailing rates for the RGV and not the out-of-town rates Applicant seeks. *Id.* PRA relies heavily on Mr. Mark Twenhafel's ("*Twenhafel*") affidavit to contest the reasonableness of Applicant's rates. Def.'s Ex. H. Twenhafel notes, as an experienced bankruptcy attorney in the RGV, that hiring out-of-town counsel in this case would be unreasonable and notes that his firm "has the staff, ability and skills to take on such representation." *Id.* Regarding reasonable hourly rates in the RGV, Twenhafel states that an attorney with 7–10 years of experience would likely charge $200.00, an attorney with 11-20 years of experience would likely charge $250.00, and an attorney with experience in excess of 20 years would charge $300.00. *Id.* PRA notes that at the time the Sanctions Motion was filed the case did not involve consumer litigation and therefore does not fall in the "hybrid" classification as Plaintiffs allege. ECF No. 219 at 5. Accordingly, PRA proposes the following rates:

> (i) Kellett – $300/hour;
>
> (ii) Bartholow – $250/hour
>
> (iii) Wells – $200/hour
>
> (iv) Khan – $75/hour.

ECF No. 195 at 20.

The relevant community in this case is the RGV, however, Applicant is a Dallas based law firm that charges the same rates in both Dallas and the RGV. *See* ECF No. 194. Notably, Applicant's rates are nearly double the rates typically charged by bankruptcy attorneys in the RGV. *Compare id. with* Def.'s Ex. H. None of the affidavits submitted by Plaintiff address the typical rates charged in the RGV. *See* Pl.'s Exs. 4, 5, 6. Twenhafel's affidavit is the only evidence of rates charged by attorneys located in the RGV. Def.'s Ex. H. Plaintiff repeatedly argued throughout the hearings and briefing that Applicant's rates are the "prevailing rates" in

the RGV because Applicant is virtually the only firm to prosecute adversaries of this nature. Although the Court is cognizant of Applicant's frequent appearances in the RGV, it finds that Applicant's rates are nevertheless out-of-town rates from Dallas.   *See* ECF No. 194. Accordingly, it is inaccurate to characterize Applicant's rates as the "prevailing rates" for the RGV.

Yet, the Court's inquiry does not end there.  Applicant may be entitled to its out-of-town rates if it was reasonable for Plaintiff to hire Applicant in the first instance and its rates are reasonable.  *In re Rodriguez*, 517 B.R. at 731 (*citing McClain*, 649 F.2d at 382).  Turning to whether it was reasonable for Plaintiff to hire Applicant initially, the Court notes that the case at bar is not a bankruptcy case, but rather an adversary proceeding combining both bankruptcy and consumer causes of action.  *See* ECF No. 97-1.  Plaintiff presented the affidavits of Solana and Limon, who both stated that no attorneys in the RGV would be willing to undertake this case without the assistance of an out-of-town firm, such as Applicant.  Pl.'s Exs. 4 at 2, 6 at 2. Regarding taking on a case such as the instant case, Whitworth stated that although her employer is the largest bankruptcy firm in the RGV the firm does not have "the staff or time that would be required to adequately represent our clients without assistance from a larger, more specialized firm." Pl.'s Ex. 5 at 2.  The Court took judicial notice of docket sheets from all adversary proceedings filed in the Brownsville and McAllen divisions from January 1, 2013, through March 6, 2017.  Pl.'s Exs. 14–23.  The cases filed by local counsel typically involve only bankruptcy causes of action, whereas the cases Applicant filed involve both bankruptcy and consumer causes of action.  *Compare* Pl.'s Ex. 15 at 42 *and* Pl.'s Ex. 16 at 28 *and* Pl.'s Ex. 17 at 23 *and* Pl.'s Ex. 20 at 150 *and* Pl.'s Ex. 21 at 1 *and* Pl.'s Ex. 22 at 9 *with* Pl.'s Ex. 16 at 4 *and* Pl.'s Ex. 17 at 32 *and* Pl.'s Ex. 19 at 1 *and* Pl.'s Ex. 20 at 143 *and* Pl.'s Ex. 21 at 7 *and* Pl.'s Ex.

22 at 1.

This Court is entitled to rely on its knowledge of customary billing practices in the RGV to determine a reasonable rate. *In re Lawler*, 807 F.2d 1207, 1212 (5th Cir. 1987). As a sitting bankruptcy judge in both the Brownsville and McAllen Divisions, as well as a former consumer practitioner in the RGV, the undersigned judge is well aware of the unique nature of bankruptcy adversary proceedings in the RGV. Consistently, Applicant zealously represents RGV consumer clients in adversaries involving both bankruptcy and consumer causes of action. *See* Pl.'s Exs. 14–22. PRA's argument that at the time of the Sanctions Motion Plaintiff's case only involved bankruptcy causes of action is disingenuous. *Compare* ECF No. 1 *with* ECF No. 97-1. Plaintiff sought to amend the complaint based, *inter alia*, on the untimely receipt of the unredacted phone calls from PRA, which were ultimately the subject of the Sanctions Motion and this Court's Order. *Compare* ECF No. 93 *and* ECF No. 97-1 *with* ECF No. 54 *and* ECF No. 158 *and* ECF No. 159. The contention that Plaintiff should be limited in his choice of counsel based on PRA's actions is outlandish. Further, Plaintiff is not required to hire different counsel to address PRA's discovery misconduct, rather than have the issue prosecuted by his chosen counsel.

Despite its status as out-of-town counsel, it was reasonable for Plaintiff to hire Applicant in this case. Limon, Solana, Stone and Whitworth are all capable, successful bankruptcy attorneys in the RGV, but do not maintain the resources to appropriately litigate a case such as Plaintiff's and manage their significant bankruptcy practices. *See* Pl.'s Exs. 4–6. Although Twenhafel noted that his firm—which is equally capable and successful—would have been able to take on Plaintiff's case, there is no evidence before this Court that Twenhafel's firm represents consumer debtors and thus would not have been a reasonable option for Plaintiff. *See* Def.'s Ex. 7. Further, Stone, Debtor's counsel, maintains a working relationship with Applicant and it was

reasonable for Plaintiff to rely on that relationship in choosing his counsel.  Kellett testified that, in the RGV, Applicant satisfies as niche as to consumer financial litigation connected to bankruptcy because very few attorneys around the country handle such cases against large creditors.  Here, there is significant evidence establishing the necessity of hiring Applicant.  *See* Pl.'s Exs. 4–6, 14–22; *McClain*, 649 F.3d at 382.  Accordingly, this Court finds that it was reasonable for Plaintiff to hire Applicant as out-of-town counsel.  *See McClain*, 649 F.3d at 382; *In re Rodriguez*, 517 B.R. at 733 (holding that the evidence that "while there are at least several skilled lawyers who were capable of taking this case . . . none . . . would have been willing to do so" demonstrated that it was reasonable to hire out-of-town counsel).

Turning now to whether Applicant's rates are reasonable, this Court considers Kellett's testimony as an expert in attorney's fees.  Kellett testified as to her thirty years of experience as a litigator in Dallas as well as her experience preparing hundreds of fee applications as well as reviewing thousands of attorney invoices.  She also noted that when setting her rates she assesses the rates of other attorneys who worked on similar cases, the reasonable fee for a case, and overhead costs.  Kellett testified that Applicant charges all clients the same rates, which are determined based on Applicant's reputation and successes as well as the rates of peers in the same field.  As to Applicant's reputation, Kellett testified regarding Bartholow's recent receipt of an Attorney of the Year award and Applicant's reputation for litigating cases fiercely.  Kellett testified that Applicant thoroughly researches each case prior to committing to representation and does not conduct a "high volume" practice in order to justify its rates.   PRA repeatedly contended throughout Kellett's testimony that Kellett was only designated as an expert as to reasonable fees in Dallas, Texas, and that her testimony is not evidence as to whether Applicant's rates are reasonable in the RGV.  PRA's argument fails because the Fifth Circuit

determined that when the necessity of out-of-town counsel is proven the out-of-town counsel's "'home' rates should be considered as a starting point for calculating the lodestar amount." *McClain*, 649 F.3d at 382.  This Court determined that Plaintiff's decision to hire out-of-town counsel was reasonable and therefore, considering Applicant's "home" rates from Dallas is appropriate for the lodestar calculation.  *Id.*  The evidence, particularly Kellett's testimony, demonstrates that Applicant's rates are "commensurate with the reasonable rates charged by a qualified Dallas litigator."  *See In re Rodriguez*, 517 B.R. at 733.  Accordingly, the Court finds that Applicant's rates are reasonable for the lodestar calculation.  *See id.*

### (ii) Reasonableness of Hours

Although this Court finds that Applicant is entitled to its rates, the inquiry into the Application does not end here.  The second piece of the lodestar calculation is a determination of the reasonable number of hours Applicant should have spent related to the Sanctions Motion.  In the Application, Plaintiff requests compensation for 495.7 attorney hours and 12.5 paralegal hours, totaling $142,730.50, and reimbursement for expenses totaling $2,023.41.  ECF No. 194 at 1.  PRA argues that Applicant shows "extreme inefficiencies" in billing judgment, akin to "killing the proverbial ant with . . . a nuclear bomb," due to multiple attorneys working on the same issue and too many hours spent on billed tasks.  *See* ECF No. 195.  Plaintiff responds that Applicant has exercised billing judgment by cutting 25% of the total fees billed and contends that "PRA's conduct alone has driven Applicant's time to reach the amount of hours requested in the fee application."  ECF No. 210 at 8.  Moreover, Plaintiff contends that Applicant's work was necessary because without the Sanctions Motion Plaintiff would not have acquired critical discovery to prosecute his claims.  *Id.* at 12.  Plaintiff also notes that PRA has not objected to 97.61 hours of Applicant's time entries and therefore requests the Court to reject any challenge

PRA presents regarding those 97.61 hours. *Id.* at 29. Conversely, PRA asserts that it did not waive any objections because it specifically objected to the hours suggested by Plaintiff and, in the alternative, objected to the inefficiencies of the hours in general. ECF No. 219 at 5.

Once again, the Court finds that PRA did not waive any objections to the hours requested in the Application because PRA objected to the amount of hours requested overall. ECF No. 195. To undertake the analysis of the reasonable number of hours, this Court addresses several issues pertaining to Applicant's time entries.

### a. *Disallowance of Fees for Issues for Which Plaintiff did not Prevail*

First, this Court notes that Plaintiff was not successful on all issues in the Sanctions Motion. *Compare* ECF No. 54 *with* ECF No. 158 *and* ECF No. 159. Specifically, this Court granted six of Plaintiff's requests in the Sanctions Motion and denied four requests. *Compare* ECF No. 54 *with* ECF No. 158 *and* ECF No. 159. Although the Court did utilize some of the Plaintiff's proposed findings of fact and conclusions of law, the Court did not utilize the entire document. *Compare* ECF No. 151 *with* ECF No. 158. Turning to the issue of the *Mejia* briefing, this Court notes that eight of Plaintiff's exhibits were admitted, whereas four of Plaintiff's proposed exhibits were not admitted. *See* ECF Nos. 145–46.

Applicant did not delineate how much time was spent on issues on which Plaintiff prevailed compared to issues on which he did not in its time entries relating to preparing the Sanctions Motion, preparing for the Sanctions Motion hearing, and preparing the proposed findings of fact and conclusions of law. *See* Pl.'s Ex. 2. This Court finds that no more than 15% of the time could have been specifically allocated to issues on which Plaintiff did not prevail and will make a 15% reduction to Applicant's time entries spent on preparing the Sanctions Motion, the proposed finding of facts, the *Mejia* briefing, and preparing for the hearing on the Sanctions

Motion.  *See In re Rodriguez*, 517 B.R. at 734.  If a greater reduction is necessary, the Court will make such a reduction as discussed below.  *See* Appendix A (denoting the hours reduced by 15% to account for the issues on which Plaintiff did not prevail).  Additionally, in response to PRA's Motion for Leave to Supplement, Plaintiff filed both a Response and a Motion to Strike.  ECF Nos. 152, 153.  The Court denied PRA's Motion to Supplement and denied Plaintiff's Motion to Strike as moot.  ECF No. 154, 156.  Accordingly, Plaintiff was successful in his Response, but unsuccessful in the Motion to Strike.  Therefore, any hours spent on the Motion to Strike are deducted in their entirety because Plaintiff did not prevail.  *See* Appendix A.  A total of $13,866.10 is disallowed for issues on which Plaintiff did not prevail.  *See id.*

> b.  *Travel*

There is not a consensus regarding the ability to bill for travel time under § 330.  *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008).  Essentially, the consistent viewpoint is that bankruptcy courts have broad discretion to award fees relating to travel.  *Id.*; *In re Rodriguez*, 517 B.R. at 735.  Applicant billed for 9 hours of travel time at half the hourly rate of Kellett and Bartholow, respectively, resulting in $1,530.00 of fees.  Pl.'s Ex. 2.  PRA asserts that Applicant is not entitled to reimbursement for travel time because it was unnecessary for Plaintiff to retain out-of-town counsel.  ECF No. 195 at 29.  This Court disagrees with PRA's assessment, as discussed thoroughly above, and finds that it was reasonable for Plaintiff to retain out-of-town counsel.  Further, Applicant demonstrated restraint in billing for travel time at half rate.  Pl.'s Ex. 2; *In re Rodriguez*, 517 B.R. at 735.

Accordingly, the Court finds that Plaintiff is entitled to the 9 hours of travel time, resulting in $1,530.00 in fees.

> c.  *Lumped and/or Vague Entries*

PRA contends that Applicant improperly "block-billed" 162.98 hours for a total of $59,950.00, which "impedes this Court's analysis and makes it impossible to tell whether, for any particular task, the number of hours spent and claimed was reasonable." ECF No. 195 at 22; *see also* Def.'s Ex. E. Therefore, PRA suggests that this Court reduce the total award by 20% to account for Applicant's block-billing. ECF No. 195 at 22. Further, PRA requests an additional 10% reduction due to Applicant's alleged block-billing to account for any improperly billed clerical work. *Id.* at 22–23. Plaintiff argues that Applicant already reduced the alleged block-billed hours by 30% and an additional 20% reduction to the entire Fee Application is inappropriate. ECF No. 210 at 19. Further, Plaintiff urges the Court to consider Pl.'s Ex. 5, which charts all block-billed entries that Applicant cut and asserts that the remaining entries in Def.'s Ex. E are not block-billed and should be allowed as requested. *Id.* at 20. *Compare* Pl.'s Ex. 5 *with* Def.'s Ex. E. Plaintiff rejects PRA's suggested 10% reduction to account for improperly billed clerical work because Applicant "no-charged" all time spent on clerical tasks. ECF No. 210 at 19; Pl.'s Ex. 6.

"Time entries that do not provide sufficient detail to determine whether the services described are compensable may be disallowed due to vagueness." *In re Digerati Tech., Inc.*, 537 B.R. 317, 333 (Bankr. S.D. Tex. 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). Additionally, entries may be vague if multiple services are lumped together without noting the time spent on each individual task listed. *Id.* at 334. Block-billing is defined as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (citing *Harolds Stores, Inc. v. Dillard Dept's Stores Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)).

At the outset of this analysis, the Court notes that there is no evidence demonstrating that Applicant improperly billed for clerical work.  Pl.'s Exs. 2, 73.  Hours will not be deducted based on the hypothetical premise that clerical work may have occurred during that time.  However, several of Applicant's time entries lump multiple services together without designating the discrete time spent on each task and therefore this Court finds that those entries are vague.  *See In re Digerati Tech.*, 537 B.R. at 333; *In re Rodriguez*, 517 B.R. at 735–36.  This Court finds that a 20% deduction to time entries with multiple services lumped together is appropriate to account for vagueness.  *See In re Rodriguez*, 517 B.R. at 735–36.

Although Applicant reduced time entries over four hours by 25% in the Fee Application, this Court finds that such time entries are vague and excessive.  *See In re Teraforce Tech. Corp.*, 347 B.R. 838, 860–61 (Bankr. N.D. Tex. 2006) (finding multiple time entries to be "unnecessary duplication of, or excessive work" by attorneys seeking fees).  For example, between July 31, and August 3, 2015, Kellett seeks fees for 30.45 hours—compared to 40.6 hours worked—for preparing for the hearing on the Sanctions Motion.  Pl.'s Ex. 2 at 5–6.  Even with the 25% reduction, the billing is voluminous and the entries are too vague to determine what tasks were undertaken during the preparations.  *See In re Teraforce Tech. Corp.*, 347 B.R. at 861.  This Court finds that an additional 20% reduction to Applicant's time entries over four hours accomplishes the goal of awarding fees without awarding for unnecessary duplication and vague work.  *See id.*  Accordingly, this Court finds that $10,753.80 in fees is disallowed as vague and excessive.  *See* Appendix B (denoting fees that are disallowed as vague and excessive).

### d.  Interoffice Communications

PRA argues that Applicant should not be entitled to any of the 11.6 hours sought for interoffice communications, totaling $4,720.00 in fees, because Plaintiff has not established a

rationale for the necessity, reasonableness, or benefit to the estate.  ECF No. 195 at 29.  Plaintiff

balks at the 11.6 hour figure PRA lists in Ex. G and contends that Applicant is entitled to recover

for interoffice communications provided they are not "inordinate" or bill two attorneys for the

same conference.  ECF No. 210 at 18.  Moreover, Plaintiff contends that the conferences were

necessary and reasonable to "maximize efficiency and prevent duplication of effort."  *Id.* at 19.

Initially, this Court finds that Plaintiff specifically seeks 9.7 hours total in connection

with interoffice communications, amounting to $3,680.00 in fees.[9]  Pl.'s Ex. 2.   Fees for

interoffice communications are allowed provided that there are "not an inordinate number of

interoffice conferences, and so long as multiple attorneys do not bill for the same conference."

*In re Rodriguez*, 517 B.R. at 736; *In re Pape*, 2014 WL 2567443, at *4 (Bankr. S.D. Tex. June 6,

2014).  The evidence needs to demonstrate that the interoffice conference was reasonable and

necessary for the case, but does not require a detailed explanation.  *La. Power & Light Co.*, 50

F.3d at 319; *In re Pape*, 2014 WL 2567443, at *4.  Accordingly, the Court finds that 9.7 hours of

interoffice communications is not inordinate in this case considering the discovery dispute that

has lasted nearly three years.  *See* Pl.'s Ex. 2.

Although the number of hours for interoffice communications is not inordinate, this

Court finds that deductions must be made to certain time entries.  On December 14, 2015, Kellett

billed 1.5 hours for "numerous emails and conferences with [Wells] regarding deadlines for

responding to PRA's notices of appeal and appeals."  *Id.* at 7.  Apart from the time entries

provided by Applicant, there is no evidence before this Court to demonstrate that 1.5 hours was

reasonable and necessary to discuss upcoming deadlines regarding PRA's Motion for Leave.

Accordingly, this Court finds it appropriate to reduce this entry by 20%.  The Court notes that

---

[9] Applicant listed multiple time entries that include interoffice communications, but do not specify the time spent on the conference.  Accordingly, these entries are deducted as discussed previously as lumped/vague entries.

both Kellett and Bartholow billed for an interoffice conference on January 6, 2016.  *Id.* at 8, 13.

Kellett bills 0.4 hours for a conference with Bartholow and Wells "regarding issues with appeal,"

whereas Bartholow bills 0.5 hours for a conference with Wells "regarding preparation of

appellee's designation of record on appeal."  *Id.*  Although a detailed explanation is not required,

these two entries are ambiguous and lead the Court to find that both Kellett and Bartholow billed

for the same interoffice conference on January 6, 2016.  Both entries seek $200.00 in fees and

this Court will disallow one entry.  *Compare id. with* Appendix C (demonstrating allowed and

disallowed fees for interoffice communications).  Accordingly, this Court finds that $3,330.00 in

fees requested for interoffice communications are allowed and $350.00 requested are disallowed.

*See* Appendix C.

Accordingly, this Court finds that the lodestar number in this case is $117,760.60 based

on Applicant's reasonable out-of-town rates and the reasonable number of hours billed in this

matter.

### F.  The Lodestar Number Should Be Not Be Reduced or Enhanced

In addition to the reductions PRA requested in the lodestar calculation, PRA contends

that the lodestar number be adjusted downward to account for Applicant's "excessive billing

practices."  ECF No. 195 at 30.  In response, Plaintiff argues that several of PRA's suggested

reductions are, *inter alia*, "inherently subsumed" within the concepts of "reasonableness" and

"billing judgment," and therefore should not be taken into account.  ECF No. 210 at 9.  Based on

this Court's examination of the relevant *Johnson* factors, the Court finds that neither an upward

nor downward adjustment to the lodestar number is appropriate.  *See In re Pape*, 2014 WL

2567443, at *6; *In re JMW Auto Sales*, 494 B.R. 877, 894 (Bankr. S.D. Tex. 2013).

### (i) Time and Labor Required

Turning to the time and labor required to try this case, PRA asserts that Applicant's billing of nearly 500 hours is "patently unreasonable" because the issue before the Court was a discovery dispute with "no novel issues, no particularly difficult briefing, [and] no unusually long hearings or trial dates."  ECF No. 195 at 30.  Although PRA is correct in its assertion that a discovery dispute typically does not involve novel legal issues, this Court disagrees with PRA's overall assessment of Applicant's billing.  As this Court determined in its Sanctions Opinion, the discovery misconduct on PRA's part was severe.  ECF Nos. 158, 159.  This Court will not punish Applicant for working long hours on Plaintiff's behalf to remedy PRA's discovery violations.  *See* ECF No. 158.  PRA likens Applicant's billing to killing an "ant" with a "nuclear bomb."  ECF No. 195 at 2.  Yet, the "ant" in this case isn't an "ant" at all; rather, it is evidence that Plaintiff explicitly informed PRA of his bankruptcy and that the debt in question did not belong to him, which goes to the heart of Plaintiff's complaint.  *Compare* ECF No. 159 at 1–2 *with* ECF No. 1 *and* ECF No. 97-1.  This Court finds that the deductions taken in the lodestar calculation suffice for  excessive time billed and that a further downward adjustment would result in unfairly punishing Plaintiff and Applicant for PRA's discovery misconduct.

**(ii) Time Limitations Imposed by Circumstances of Case**

PRA contends that although Plaintiff claims that Applicant was under significant time pressure, there has been no evidence to demonstrate that this time pressure was more than the pressures of normal litigation.  ECF No. 195 at 32.  Plaintiff argues that a substantial amount of time lapsed between filing the Sanctions Motion and the hearing on the Sanctions Motion, during which the case was transferred to the Honorable Judge of this Court.  ECF No. 210 at 14–15.  Plaintiff asserts that these circumstances required significant preparation due to the lapse in time and necessity to potentially bring the Court up to speed on the history of the case.  *Id.* at 15.

Additionally, Plaintiff notes that PRA engaged new counsel after Plaintiff filed the Sanctions Motion, which involved a shift in strategy. *Id.* This Court finds that the time pressure Plaintiff experienced was not so extraordinary to warrant an upward adjustment to the lodestar calculation. *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (holding that an upward adjustment is "proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts").

### (iii) Delay in Compensation

Plaintiff asserts that Applicant is entitled to an enhancement of fees based on the Supreme Court's ruling in *Perdue v. Kenny A. ex rel Winn*, 599 U.S. 542 (2010). This suggestion is misplaced and incorrect. In *Perdue*, the Court stated that although lodestar numbers may be enhanced, it should be done only in "extraordinary circumstances." *Id.* at 556. This case does not present an extraordinary circumstance.

Plaintiff's briefs and arguments during the hearings discussed the "extreme delay" in compensation for the case. *See* ECF No. 210 at 32. Although PRA has in fact not reimbursed Applicant for the sanctions, the case has not concluded. In taking a case, attorneys "presumably [understand] that payment of fees will generally not come until the end of the case." *Perdue*, 599 U.S. at 556. Plaintiff, with the help of Applicant, succeeded in his Sanctions Motion, but has yet to succeed on the merits. Further, on November 24, 2015, this Court ordered the parties to agree on an amount of fee shifting within 21 days of the Sanctions Order and to file a motion if an agreement could not be reached. ECF No. 159 at 3. Plaintiff, however, did not file the Fee Application until February 15, 2017, which is well after the expiration of 21 days. *Compare id. with* ECF No. 194. Therefore, this Court finds that Plaintiff's request for an enhancement is denied.

**G.  Expenses are Awarded in the Amount of $2,194.64**

Having determined the amount of fees Applicant is to which entitled, this Court must determine whether Applicant is entitled to the requested expenses.  Pl.'s Ex. 3.  Turning to the $2,336.31 in expenses sought by Plaintiff, PRA contends that Applicant should not be reimbursed for travel or meal expenses and at a minimum should be limited to either 50% of the meal cost or 50% of the McAllen, Texas per diem rate because hiring out-of-town counsel was unreasonable.  ECF No. 195 at 29–30.  Once again, this Court disagrees and finds that Plaintiff's decision to hire out-of-town counsel was reasonable.  Applicant denotes $2,020.71 in expenses related to travel for the Sanctions Hearing, including airfare, hotel, car rental, cab fare, and parking.  Pl.'s Ex. 3.  Additionally, Applicant seeks $2.70 in expenses for "Sanctions hearing office supplies."  *Id.*  The Court considers office supplies to be a part of Applicant's overhead and therefore, not reimbursable.  *In re Gulf Consol. Serv. Inc.*, 91 B.R. 414, 416 (Bankr. S.D. Tex. 1988) (finding overhead expenses to be not reimbursable).  Accordingly, this Court finds that Applicant is entitled to reimbursement of $2,020.71 for travel expenses, but that $2.70 for office supplies is disallowed.  *See* Pl.'s Ex. 3.

Turning now to the $312.90 in meal expenses Applicant seeks, the Court notes that Applicant classifies various meals differently: namely, (i) "Sanctions Hearing Prep;" (ii) "Sanctions Hearing;" and (iii) "Sanctions" meals.  *See id.*  First, Applicant seeks $112.39 in expenses for "Sanctions Hearing Prep" meals occurring on August 1, 2015, and August 2, 2015. *Id.*  Both Applicant's own classification and the dates demonstrate to the Court that the meals did not occur during the course of Applicant's travel, but rather before leaving for the RGV.  *Id.* These meals should be subsumed into Applicant's overhead and therefore are not reimbursable. *In re Gulf Consol. Serv. Inc.*, 91 B.R. at 417.  Second, Applicant seeks $171.83 in expenses for

"Sanctions Hearing" meals occurring between August 3, and August 6, 2015.  Pl.'s Ex. 3.  The Court finds that the "Sanctions Hearing" meals are expenses generated during Applicant's travel and are therefore reasonably reimbursable.  *In re Porter*, 2014 WL 585962, at *9–10 (Bankr. E.D. La. Feb. 14, 2014) (allowing meal expenses incurred while traveling).  Finally, Applicant seeks $26.68 for a "Sanctions" meal, which occurred on August 24, 2015.  Pl.'s Ex. 3.  There was no hearing in this case at on August 24, 2015, and there is no evidence before the Court that the "Sanctions" meal was incurred during travel to a hearing for this case.  Accordingly, this Court finds that the "Sanctions" meal should be subsumed in Applicant's overhead and therefore the meal is not reimbursable.  *In re Gulf Consol. Serv. Inc.*, 91 B.R. at 417.

Based on the above, the Court finds that $2,194.64 in expenses is allowed and $141.67 in expenses is disallowed.  *See* Appendix D (calculating allowed and disallowed expenses).

## V. CONCLUSION

Based on this Court's ruling in the Sanctions Opinion and Sanctions Order, Plaintiff submitted the Application requesting $142,730.50 in fees and $2,336.31 in expenses, in addition to $34,237.00 in fees sought in defense of the Application.  ECF No. 194; Pl.'s Exs. 2, 3, 73. The Court disallows $59,206.90 in fees for issues on which Plaintiff did not prevail; lumped and/or vague time entries; duplicative interoffice communications, and defense of the Application.  Further, the Court disallows $141.67 in expenses for expenses that are subsumed in Applicant's overhead.  The fees and expenses awarded to Applicant are illustrated as follows:

| REQUESTED FEES & EXPENSES | AMOUNT | SUBTOTAL | TOTAL |
|---|---|---|---|
|  |  |  |  |
| **FEES** |  |  |  |
| Sanctions Motion Fees | $142,730.50 |  |  |
| Defense of Fees | 34,237.00 |  |  |
| Subtotal Fees |  | $176,967.50 |  |
|  |  |  |  |

| | | | |
|---|---|---|---|
| Less | | | |
|   Defense of Fees | $34,237.00 | | |
| Appendix A Disallowance | $13,866.10 | | |
| Appendix B Disallowance | $10,753.80 | | |
| Appendix C Disallowance | $350.00 | | |
| Subtotal Disallowed Fees | | $59,206.90 | |
| | | | |
| Total Allowed Fees | | | $117,760.60 |
| | | | |
| **EXPENSES** | $2,336.31 | | |
| | | $2,336.31 | |
| Less | | | |
| Appendix D Disallowance | $141.67 | $141.67 | |
| | | | $2,191.64 |
| | | | |
| Grand Total Allowed (Fees & Expenses) | | | $119,952.24 |

Accordingly, based on the foregoing, the Application, ECF No. 194, is hereby **GRANTED** in part and **DENIED** in part.  Applicant is awarded $117,760.60 in fees and $2,194.64 in expenses for an overall award of $119,952.24 in fees and expenses.  PRA shall deliver a check in good and sufficient funds totaling $119,952.24 made out to Kellett & Bartholow PLLC to 11300 N. Central Expressway, Suite 301, Dallas, TX 75243 within thirty days of entry of this Memorandum Opinion and accompanying Order.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 09/28/2017.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge